Syllabus.

The Louisville and Nashville Railroad Company *et al.*

*v.*

Ursula Koelle *et al.*

*Filed at Mt. Vernon June 21, 1882—Rehearing denied November Term, 1882.*

| | |
|---|---|
| 104 | 455 |
| 142 | 351 |
| 146 | 563 |
| 104 | 455 |
| 160 | 170 |
| 104 | 455 |
| 177 | 403 |
| 104 | 455 |
| 194 | [5]504 |
| 104 | 455 |
| 199 | [4]287 |
| 104 | 455 |
| 212 | [4] 93 |
| e212 | [3]164 |
| 213 | [3]538 |
| 214 | [4]290 |
| 114a | [4]441 |
| 104 | 455 |
| 115a | [3]569 |

1. RIGHT OF WAY—*in gross, not assignable.* Where a grant of a right of way is in gross, it will be personal to the grantee, and incapable of assignment; but if it is appurtenant to other lands, or an estate, it is the subject of transfer, and will pass by a conveyance of the estate to which it is appurtenant.

2. SAME—*whether appurtenant or in gross.* A granted a right of way across his land to B, C and D, fifteen feet wide, to the land of C, as located by an engineer of a railway company in a section described, "to be used by said grantees and others for railroad and switch purposes," to revert to the grantor when not so used, otherwise to remain the property of the grantees, their heirs and assigns forever, and it appeared that the grantees paid the consideration and constructed the switch at their own expense, and each of the grantees had coal lands adjoining such switch from which they mined and raised coal for transportation over such switch to a railroad, although the land of C alone was mentioned in the deed, and that at the time of the grant the switch had been actually located across the lands of the several grantees. It was *held,* that the right of way thus granted was appurtenant to the lands of B and D as well as to the land of C, which alone was described, and as such was transferable to their grantees.

3. DEED—*circumstances looked to in construing.* The ordinary rule that the rights of the parties to a deed must be ascertained from the words of the instrument, is subject to the modification that surrounding circumstances may be taken into consideration in order to ascertain the intention of the parties. Courts must give a common-sense construction to grants, and will consider the state of things and the considerations in view of the parties at the time the grant is made, which move them to its execution and acceptance.

4. SAME—*plat referred to becomes a part of description.* Where a grant of a right of way from a railroad track to certain coal mines refers to it as having been located by an engineer, the location thus referred to becomes a part of the deed,—a descriptive part of the subject of the conveyance,—the same as if the plat thereof had been set out in full in the deed.

5. EASEMENT—*presumption that it is appurtenant.* Though an easement, like a right of way, may be created by grant in gross, or attached to the person of the grantee, this is never presumed when it can fairly be construed to be appurtenant to some other estate.

6. SAME—*may be in part appurtenant and partly in gross.* In the grant of a right of way to several persons, it may be a right appurtenant as to some of the grantees, and in gross as to others. There is no incompatibility in such a grant.

APPEAL from the Circuit Court of St. Clair county; the Hon. WILLIAM H. SNYDER, Judge, presiding.

Mr. J. M. HAMILL, and Messrs. HAY & KNISPEL, for the appellants:

In construing a grant of an easement, or any other grant, the rights of the parties must be determined from the words of the deed. But this general rule is subject to the modification that the surrounding circumstances may be taken into consideration to ascertain the intention of the parties. The words used in a deed will therefore be construed with reference to the condition of things to which they have reference. Goddard's Law of Easements, 275, 276; *Nash* v. *Towne,* 5 Wall. 689; *Ricker* v. *Fairbanks,* 40 Maine, 43; *Hadden* v. *Shoutz,* 15 Ill. 581; *United States* v. *Appleton,* 1 Sumner, 492; 1 Wait's Actions and Defences, 116.

If a contract or deed admits of more than one construction, one of which will render it inefficacious, or nullify it, that construction should be adopted which will carry it into effect. The meaning will be adopted which is adverse to the grantor. *Pugh* v. *Leeds,* Cowp. 714; *Peckham* v. *Haddock,* 36 Ill. 38; *City of Alton* v. *Illinois Transportation Co.* 12 id. 38; *Rolker* v. *Great Western Ins. Co.* 3 Keyes, 17.

Several or many persons may have rights of way over one and the same road, which are easements. Goddard's Law of Easements, 75; *Semple* v. *London and Birmingham Ry. Co.* 9 Simons, 209; *Duncan* v. *Larch,* 6 Q. B. 905.

Grants of easements are to be construed like other grants, deeds or contracts. 2 Washburn on Real Prop. 27.

Mr. CHARLES W. THOMAS, for the appellees:

For a definition of a private right of way, and the requisites of such way, see *Garrison* v. *Rudd,* 19 Ill. 558.   Whether a way is appurtenant to land or in gross to the grantee.   Ibid.

In *Koelle* v. *Knecht,* 99 Ill. 396, the grant in question in this case was before this court, and while the present writer urged that it contained a reservation appurtenant to Koelle's land of a right to use the whole switch when constructed as then located, the court held that the grant was clearly a grant by Koelle of a right of way appurtenant to Schmisseur's land. The appellees in this case are content to abide by the law as there announced, and to maintain that the decision was correct.  . The *terminus a quo* is in Schmisseur's land, which is in section 7.   The way granted is limited to that located in section 6, which ends at the line of Schmisseur's land.   It has every element of a way appurtenant.   If it be appurtenant, it can not also be in gross.   Washburn on Easements, sec. 29.

No rule is better settled by the authorities than that forbidding the owner of a private way to a particular close to extend it to other closes, or use it for purposes not mentioned in the grant.   Goddard on Easements, 324, *et seq.*—where the subject is discussed.   Washburn on Easements, sec. 186, *et seq.*

Mr. JUSTICE SHELDON delivered the opinion of the Court:

This was a bill for an injunction, brought by the widow and heirs of Christian Koelle, deceased, against the Louisville and Nashville Railroad Company, Daniel Knecht, August Lenz, and the Dutch Hollow Coal Mining Company, to restrain the railroad company from transporting, and the other defendants from shipping, coal or other freight over a certain railroad switch upon complainants' land, from coal mines near to, and connected with, said switch, which are operated by

such other defendants. On final hearing the court below decreed the relief prayed for, except as respected the Dutch Hollow Coal Mining Company, and all the defendants except defendant Lenz appeal from the decree.

The right which the defendants claim of the use of the switch in question, rests upon the following agreement, under seal, made on the 28th day of November, 1870, between Christian Koelle, in his lifetime the then owner of the land upon which the switch is in part located, and Daniel Knecht, Alpheus Boling, and Joseph Schmisseur:

"Know all men by these presents, that I, Christian Koelle, for the consideration hereinafter named, do hereby convey to Daniel Knecht, Joseph Schmisseur and Alpheus Boling, the right of way for a switch from the St. Louis and Southeastern railway across my land, fifteen feet wide, to the land of said Schmisseur, near the turnpike, where the same was located by the said railroad company by its engineer, in section 6, township 1 north, range 8 west, in St. Clair county, Illinois, to be used by said grantees and others for railroad and switch purposes, and when not so used to revert to me, said grantor, otherwise to remain the property of said grantees, their heirs and assigns forever, for the uses and purposes named. In consideration therefor the said grantees have this day paid to said Koelle the sum of $200, the receipt whereof is hereby acknowledged, and upon the further consideration that said grantees permit said grantor to use said switch and railroad the same as the grantees."

It appears that the switch was built from the main track of said railroad, in accordance with said agreement, in 1871, the said Knecht, Schmisseur and Boling doing all the grading for the switch, and building the bridges and culverts upon its line, and the railroad company furnishing and laying down the railroad ties and iron. Before the switch was completed Boling sold out his interest to Lenz, and the latter thereafter occupied Boling's position in the enterprise. The Louisville

and Nashville Railroad Company is the successor of the St. Louis and Southeastern Railway Company. The Dutch Hollow Coal Mining Company owns and operates a coal mine on the switch upon Schmisseur's land. Lenz and Knecht own and operate coal mines on the switch on their own lands, and not acquired from Schmisseur.

The whole case turns upon the construction of the above grant of the right of way for the switch, made by Christian Koelle to Knecht, Schmisseur and Boling—upon what interest such grant conveyed to the grantees. The circuit court held that the grant was solely appurtenant to the land of Schmisseur, and that the railroad company had no right to transport coal or other freight over the switch from any land upon it other than from the Schmisseur land.

This same agreement was before us on a former occasion, in the case of *Koelle et al.* v. *Knecht et al.* 99 Ill. 396, where we said in reference to it: "We are clearly of opinion that this right of way became appurtenant to the Schmisseur land." This is relied upon as a justification of the decree of the court below. If the deed did convey a right of way appurtenant to Schmisseur's land, it does not follow that that was all the interest which was conveyed by the instrument. There might also have been granted at the same time a right of way appurtenant to the lands of Knecht and Boling, or one to them in gross. We see no incompatibility in such a grant. There was in the former case no occasion to pass upon the rights of Knecht and Boling, and there was no expression of opinion in regard thereto made or intended. If it should be held that there was no right of way given appendant to the lands of Knecht and Boling, there was at least granted to them one in gross. The grant is in no respect exclusive as to Schmisseur, or his land, but it is to the three equally, although Schmisseur's land is named as the terminus. There is conveyed to Knecht and Boling the right of way for a switch across Koelle's land as fully as one

is capable of being conveyed by the language of a deed. As respects Knecht, this would be sufficient for the purpose of this case, but would not be so as to Lenz, as the grant was not to him personally from Koelle, but he claims by assignment from Boling. If the grant of the right of way was to Knecht and Boling in gross, it would be a right personal to them, and incapable of assignment, and Lenz would take nothing by the conveyance from Boling to him. *Garrison* v. *Rudd,* 19 Ill. 558, and authorities there cited; *Koelle et al.* v. *Knecht et al.* 99 Ill. 396.

. But we are inclined to think that the agreement in this case for the conveyance of the right of way may bear the construction that it granted a right of way appurtenant to the lands of Knecht and Boling as well as to the land of Schmisseur. True, the land of Schmisseur alone is mentioned in the deed, and where an easement is granted in express terms by deed, the ordinary rule which governs in similar cases prevails, that the rights of the parties must be ascertained from the words of the deed. Yet this is subject to the modification that surrounding circumstances may be taken into consideration in order to ascertain the intention of the parties to the deed. (Goddard's Easements, 275.) In *Hadden* v. *Shoutz,* 15 Ill. 582, this court said : "In construing deeds or other writings, courts must seek to ascertain and give effect to the intention of the parties ; and for that purpose they may and will take notice of attendant circumstances, and by them determine the intention of the parties. * * * The law must give a common-sense construction to grants, and consider the state of things and the considerations in view of the parties at the time the grant is made, which move them to its execution and acceptance."

The decree finds : "That said switch was built from the main track of said railroad in said section 6, in the year 1871, as located by the engineer of said St. Louis and Southeastern Railway Company, across the land of Koelle, Knecht

and Schmisseur, to the coal mine of said August Lenz, near the turnpike; that said switch, where it passes the Knecht mine and reaches the Lenz mine, is upon said Schmisseur's land; that said Lenz owns and operates a coal mine on said switch, near the turnpike; that said Knecht owns and oper-ates a coal mine on said switch where it crosses said Schmis-seur's land to reach the coal mine of said Lenz."

A plat of the location of the switch is made an exhibit to the bill, and is incorporated in the decree, which plat shows the switch to pass by the coal mine of Knecht, and terminate at the coal mine of Lenz, the farthest point from the main track of the railroad. . The agreement itself refers to the. switch having been located by the engineer of the railroad company, and grants the right of way for the switch where it had been located, and the switch was built where it had been thus located. It appears, then, that at the time when this conveyance of the right of way for the switch was made, the switch had been actually located across the land of Koelle, Knecht and Schmisseur to the coal mine of Lenz, near the turnpike, and under such circumstances Koelle con-veys to Knecht, Schmisseur and Boling the right of way for the switch where the same had been located. The location thus referred to became a part of the deed,—a descriptive part of the subject of conveyance,—making it the same as if the deed in terms had described the location of the switch for which in part the right of way was granted, as passing across the land of Knecht, and terminating at the coal mine of Lenz. In case the deed had in terms so described the location of the switch for which in part the right of way was granted, we think it would have been held that the grant was appurtenant to the land of Knecht and the coal mine of Lenz. As respects Lenz, it would have come within the very words of the definition of a way appurtenant: "Ways are said to be appendant or appurtenant when they are incident

to an estate, one terminus being on the land of the party claiming." Washburn on Easements, 232.

The consideration for the right of way was paid by the three, Knecht, Schmisseur and Boling, and they did the grading for the switch, and built the bridges and culverts at their own expense. There can be no question that the purpose, as respected Knecht and Boling, was for the accommodation of their lands,—for the shipment and transportation of coal from them by the railroad. It is laid down in Washburn on Easements, 40: "Though an easement, like a right of way, may be created by grant in gross, as it is called, or attached to the person of the grantee, this is never presumed where it can fairly be construed to be appurtenant to some other estate."

We think that, in view of all the circumstances here appearing, the right of way granted may fairly be construed as appurtenant to the estates of Knecht and Boling, and so the right of Boling was transferable, and passed to Lenz.

The decree of the circuit court will be reversed, and the cause remanded for further proceedings in conformity with this opinion.

*Decree reversed.*