Charles M. Gale, Defendant in Error, v. United States Brewing Company of Chicago, Plaintiff in Error.

Gen. No. 18,259.

1. LANDLORD AND TENANT—*evidence of intention of parties to lease.* In an action for rent claimed to be due under a written lease, which provides that if the license to conduct a saloon business in said premises, at any time during the said term, is not issued or if issued shall be revoked, the lessee shall have the right to terminate the lease on thirty days' notice, evidence to show the intention of the parties in the use of the particular words employed in the lease is admissible.

2. LANDLORD AND TENANT—*construction of leases.* The same rules of law are applicable to the construction of leases that are applicable to the construction of other contracts, and where the language of a lease is the subject of construction, the object to be attained is to ascertain, if it can be done, the intention of the parties to the instrument and give effect to that intention.

3. LANDLORD AND TENANT—*where language in lease is plain.* Where the language in a lease is plain and unambiguous, proof *aliunde* cannot be heard to contradict or vary its meaning or make it inconsistent with the language used in the instrument.

4. LANDLORD AND TENANT—*what may be considered in construction of lease.* In construing a lease, preliminary negotiations between the parties may be considered for the purpose of determining the meaning and intention.

5. LANDLORD AND TENANT—*where tenant is not entitled to terminate lease.* In an action for rent claimed to be due under a written lease which provides, that if the license to conduct a saloon business in said premises at any time during the term is not issued, or if issued shall be revoked, the lessee shall have the right to terminate the lease on thirty days' notice, defendant having made no application to renew the license on its expiration, is not entitled to terminate the lease.

Error to the Municipal Court of Chicago; the HON. JOHN R. NEWCOMER, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1912. Affirmed. Opinion filed June 12, 1913. Rehearing denied June 26, 1913.

**Statement by the Court.** On October 6, 1911, Charles M. Gale, plaintiff below, commenced a suit in the Municipal Court of Chicago against the United States Brewing Company, a corporation, defendant below, to recover the sum of $176.56, as rent, claimed to be due on a written lease of certain premises, situate in the city of Oregon, Illinois. The lease in question was dated April 11, 1910, and by it Albert J. Carlson and Frank B. Gale, as lessors, leased said premises to the defendant from May 5, 1910, to May 5, 1912 (with the privilege of subletting the same or any part thereof without the lessors' consent) for a monthly rental of $50, payable in advance. During the month of June, 1911, the premises were conveyed by the owners and lessors to the plaintiff, and the lease assigned to him

on June 29th, and plaintiff claimed that a balance of $26.56 was due him for rent for said month of June, 1911, and also $150 for the months of July, August and September, 1911. The defendant admitted the sum of $26.56 to be due and unpaid, but claimed that the lease had been terminated on June 30, 1911. The case was tried before the court without a jury, and on January 12, 1912, the court found the issues against the defendant, assessed plaintiff's damages at $176.56, and entered judgment on the finding, which judgment the defendant by this writ seeks to reverse.

The lease was partly printed and partly written and was of the form commonly used by the defendant. The 6th paragraph was as follows:

"6th. It is mutually covenanted and agreed, by and between the parties hereto, that this lease is made upon the express condition and consideration that *if the City of Oregon license* to conduct a saloon business in said premises, *at any time during the said term, is not issued,* or if issued shall, at any time during said term, be revoked, then and in such case said lessee shall have the right to terminate this lease by giving thirty days' notice in writing of its intention so to do, and upon the exercise of said option said lease shall become null and void."

Prior to May 31, 1911, and prior to the assignment of said lease to the plaintiff, the following written notice, dated May 19, 1911, was served by the defendant upon the lessors, Albert J. Carlson and Frank B. Gale:

"No license to conduct a saloon in the following described premises (describing them) has been issued for the period beginning May 1st, 1911, by the City of Oregon. Because of this fact the undersigned United States Brewing Company of Chicago hereby notifies you that it will on the 30th day of June, A. D. 1911, terminate the lease given by you to it April 11th, 1910, covering the above-mentioned premises, and the sheds and outbuildings on the same, for the period begin-

ning May 5th, 1910, and ending May 5th, 1912, said cancellation to be made in accordance with the 6th clause of said lease giving the undersigned the right so to do.''

It also appeared from the evidence that before the April, 1910, election, the city of Oregon was ''dry territory,'' that as a result of that election it became ''wet territory,'' and that it ''has been wet ever since.'' After said election and early in the month of April, 1910, C. L. Thompson, of Chicago, an agent of the defendant, met said Frank B. Gale and one F. W. Burchell, an attorney at law, and the three persons had a conversation relative to the defendant's leasing the premises in question. This conversation was to the effect that the defendant desired to lease said premises for a period of one year; that said Gale, on behalf of himself and Albert J. Carlson, was willing to rent the same to the defendant for a period of two years but for no shorter time; that said Thompson then stated that defendant would lease the premises for two years, ''providing the City of Oregon stayed licensed territory. Subsequently to this conversation the lease was executed, and on May 2, 1910, the city council of the city of Oregon passed an ordinance, which was in force and effect from that date until the time of trial of this case, and which provided, *inter alia,* that ''the city council, in its discretion is hereby authorized to grant licenses for the sale of intoxicating liquors within the corporate limits of said city. * * * The person desiring to obtain such license shall be a legal voter and resident of said city of Oregon and shall make application in writing therefor, * * * and pay * * * the full amount of the license fee for the period for which such license is issued at the rate of $1,000 per annum. * * * No license shall be issued for a less period than six (6) months, nor shall any such license extend beyond the municipal year in which the same is granted.''

Immediately following the passage of this ordinance, a license to conduct a saloon on said premises, expiring April 30, 1911, was issued to H. L. Emmerson, who was a legal voter and resident of the city of Oregon, and who paid a license fee of $1,000 to the city, he having borrowed the amount of the fee from the defendant. With the consent of the defendant the said Emmerson operated a saloon on said premises from May 14, 1910, until April 30, 1911, when he vacated the premises, owing at that time a considerable sum of money to the defendant. No application in writing for a license to conduct a saloon in said premises was made to the city by any person subsequently to April 30, 1911, nor does it appear that the defendant itself made any application, or made any attempt to have a legal voter and resident of Oregon apply for such a license, subsequently to said date, or at any time prior to the service of said notice of May 19, 1911. Thompson, the agent of defendant, however, testified that he called on the Mayor of the city of Oregon and informed him that he had a party, a nonresident of Oregon, who desired to take out a license to operate a saloon on said premises, but that the Mayor replied that a license could not be granted to a person who was not a resident of the city, and that the person would have to acquire citizenship in Oregon before the application 'ould be granted.

WINSTON, PAYNE, STRAWN & SHAW, for plaintiff in error; JOHN C. SLADE, of counsel.

FRED B. SILSBEE, for defendant in error.

MR. PRESIDING JUSTICE GRIDLEY delivered the opinion of the court.

Counsel for defendant contend that, inasmuch as *after* April 30, 1911, no license by the city of Oregon to conduct a saloon business in said premises was

*issued,* the defendant had the right to terminate the lease in the manner provided in paragraph 6th thereof, notwithstanding the fact, as appears from the evidence, that subsequently to said date no *application* in writing for a license, as provided by the ordinance, was made by any person, and that, therefore, the defendant, having complied with the provisions of paragraph 6th as to notice, cannot be held liable for any rent accruing after June 30, 1911, and the judgment is erroneous. Counsel further contend that the language used in said paragraph 6th, viz.: "If the City of Oregon license to conduct a saloon business in said premises, at any time during the said term, is *not issued,* or if issued shall * * * be revoked," is plain and unambiguous, and that the trial court erred in admitting evidence as to the preliminary negotiations between the parties leading up to the signing of the lease, and other evidence, tending to show the intention of the parties. It appears from the evidence that a license *was issued* during the first year of the term of the lease and for the period ending April 30, 1911, and that that license was not revoked. As we construe the words of the paragraph, above quoted, they suggest that if the city, at any time during the term of the lease, *issues* a license to conduct a saloon business in said premises and that license is not revoked, the defendant has no right to terminate the lease. But we think that the language is not plain. Furthermore, the evidence shows that no application in writing, as provided by the ordinance, was made by any person to the city for a license after April 30, 1911, the date when the period of the license issued had expired, and it does not appear that the defendant made any attempt to have a license issued to a legal voter or resident of the city of Oregon subsequently to that date. We think that the words "licensed" and "issued," as used in said paragraph, should be construed together. The word "license" is defined in Webster's

Dictionary as "a formal *permission* from the proper authorities to perform certain acts." This suggests that a license is something to be applied for, that it is granted upon a request or application.

Under the facts of this case, we are of the opinion that the court did not err in admitting evidence tending to show the intention of the parties in the use of the particular words employed in said lease, and that the intention was that the lessee might terminate the same in the manner provided, if upon proper application being made to the city of Oregon for a license to conduct a saloon in said premises the license was refused by the city, or if having been issued was revoked by the city without fault of the defendant. "The same rules of law are applicable to the construction of leases that are applicable to the construction of other contracts, and where the language of a lease is the subject of construction, the object to be attained is to ascertain, if it can be done, the intention of the parties to the instrument and give effect to that intention. If the language is plain and unambiguous, proof *aliunde* cannot be heard to contradict or vary its meaning or give it a meaning inconsistent with the language used in the instrument." *Chicago Auditorium Ass'n v. Fine Arts Bldg.,* 244 Ill. 532, 538. But "greater regard is to be had to the clear intent, when ascertained, than to any particular words which may have been used in the expression of that intent." *Field v. Leiter,* 118 Ill. 17, 26. "The court will, if necessary, put itself in the place of the parties, and read the contract in the light of the circumstances surrounding them at the time it was made, and of the objects which they then evidently had in view. So, also, the acts of the parties themselves, indicative of their construction placed upon it, may be resorted to for the purpose of determining the true meaning of the written agreement. And in this regard it makes no difference whether such acts are contemporaneous or sub-

388　　Appellate Courts of Illinois.

Ludlow Valve Mfg. Co. v. City of Chicago, 181 Ill. App. 388.

sequent." *Street v. Chicago Wharfing Co.*, 157 Ill. 605, 613, 614. And the preliminary negotiations between the parties may, in some cases, be considered for the purpose of determining the meaning and intention of the parties in the use of the words employed in the instrument. *Chicago Auditorium Ass'n v. Fine Arts Bldg., supra.*

The judgment of the Municipal Court is affirmed.

*Affirmed.*