F. E. GILLETT, Appellant, *vs.* H. V. TEEL, Appellee.

*Opinion filed February 16, 1916.*

1. CONTRACTS—*when a contract is merged in subsequent deed.* If a deed made in pursuance of a contract embraces all the sub-jects contained in the contract the contract merges in the deed and can be resorted to only for the purpose of evidence.

2. SAME—*when contract is not merged in deed.* An executory agreement, verbal or written, for the performance of distinct and separate provisions, is not merged in or superseded by a subsequent deed in execution of a part, only, of such provisions, except to the extent of the provisions covered by the deed.

3. SAME—*when evidence of acts showing practical construction of contract by the parties is admissible.* If the terms of a written agreement are doubtful, evidence of acts showing a practical construction of the contract by the parties thereto is admissible to enable the court to understand the language of the contract in the sense in which it was used by the parties.

4. SAME—*provision of a contract construed as not merged in deeds or as requiring construction of a bridge.* A provision in a contract between parties about to exchange lands, to the effect that it is proposed to cut a channel at a certain place for the purpose of straightening a creek and that either party shall have the

right to dig the same, is not merged in subsequent short-form warranty deeds containing no provision on the subject of the ditch; nor will such agreement be construed as requiring one party to build a bridge across the ditch, where the evidence showing the acts of the parties does not indicate that the parties intended to construct any bridge but that the former private road across the land should be abandoned.

APPEAL from the Circuit Court of Schuyler county; the Hon. GUY R. WILLIAMS, Judge, presiding.

H. M. BILLINGSLEY, and CHIPERFIELD & CHIPERFIELD, for appellant.

B. O. WILLARD, for appellee.

Mr. JUSTICE CARTER delivered the opinion of the court:

This was a bill filed in the circuit court of Schuyler county by appellant, F. E. Gillett, to enjoin appellee, H. V. Teel, from changing the course of Crooked creek or diverting its waters into a ditch dug under the direction of Teel for the purpose of straightening said creek, and also praying that Teel might be required to build a suitable bridge or crossing over said ditch to afford means of passing between Gillett's land and. a certain public highway a short distance north. The chancellor heard the evidence and dismissed the bill for want of equity. The case was appealed to this court on the ground that a freehold was involved, it being urged here and in the trial below that a perpetual easement was interfered with by the digging of this ditch.

The land in question is in the southern part of Schuyler county, not far from the Illinois river, and is usually called in the evidence "the island" and will be so designated here. It is oval in form, containing about fifty-four acres, and is almost entirely surrounded by a stream known as Crooked creek, except for a strip or "neck" of land about five hundred feet wide which connects it with the land lying to the north. The location of the land and creek and surround-

ings is approximately shown and will be better understood
by the plat which here follows:

Prior to May 7, 1909, Gillett was the owner of the land
lying immediately to the north of the island and including
a part of the neck above referred to. He also owned about
thirty-three acres in the westerly part of the island, and
Teel owned the remainder of the island. On said May 7
Gillett deeded to Teel his land north of the island and Teel
deeded his part of the island, approximately twenty-one
acres, to Gillett. In this transaction the consideration for
the land Gillett sold Teel was $9360, and to meet it Teel
paid Gillett $8520 in money and deeded him the twenty-
one acres of the island at a valuation of $840. The deeds
whereby the properties were conveyed were ordinary short-
form statutory warranty deeds, and contained nothing about
digging the ditch or straightening the creek, or the right of
way here under consideration. The contract under which
these deeds were given was executed April 24, 1909, be-
tween Gillett and Teel, and contained a clause which read:
"It is proposed to cut a channel for Crooked creek, for the

purpose of straightening the same, on the north line of the tract to be conveyed by said Teel to said Gillett, and either party to this agreement shall have the right to cut or dig the same."

The evidence shows that for years the person owning the island had been accustomed to get to and from a public road running east and west some distance north of the creek, by what is claimed to be a private road or right of way leading from the northern part of the island and along the westerly side of the neck and then over the land formerly owned by Gillett but now by Teel; that it was impossible to get upon the island by a wagon or other vehicle by any other way than this road, as the creek was too wide and deep and had sides too steep to be forded. The evidence tends to show, also, that sometimes a ferry was used to get across to the island. Crooked creek in that locality is about one hundred and forty feet wide and from fifteen to twenty feet deep at different stages, and navigable by boats from the Illinois river to a place about a mile and a half up the creek from the island, called Starr bridge, except when the creek is frozen or very low. The evidence tends to show that it was navigable about seven or eight months of the year. It forms the boundary between Schuyler and Brown counties from the Illinois river for several miles northwest. There was an elevator at Starr bridge which was a market for grain in that neighborhood, and the grain was shipped by boats from this elevator. A corncrib stood near the creek bank on appellant's land, and the evidence shows that sometimes the corn raised on the island was shipped by boat to market, there being a boat landing. A public highway was situated about a quarter of a mile south of the island, in Brown county.

The evidence shows that the parties to this litigation had been negotiating for the exchange of the lands some time prior to the execution of the said contract. The land on the island, as well as other lands in the bottom near by,

was subject to overflow in high water, and the project of straightening Crooked creek by cutting through the neck of the island was discussed during these negotiations, it being expected that the straightening of the creek in this way would lessen the liability of the island and the other low lands to overflow. Before the time of executing said deeds, in May, 1909, the subject of a bridge across the proposed ditch does not seem to have been discussed or suggested, although there was testimony to the effect that it was suggested between them that Gillett could cross the cut by means of a small ferry, costing not more than $50, until the old bed on the south side of the creek should fill up so he could get out on that side to the highway in Brown county. Gillett and Teel were not the only ones interested in cutting this ditch. The testimony shows that about the time of executing the contract in question a public meeting was held in that neighborhood to raise funds for cutting the ditch across the neck of the island; that Gillett talked publicly there, advocating the cutting of the ditch, giving as his reasons that it would benefit him as it would others present, but stating that it would be some inconvenience to him for several years until the creek filled up and that such inconvenience ought to be equivalent to his share of the expense. Several witnesses who attended this meeting testified that Gillett stated this, and he does not deny it in his testimony. About May 1, 1909, Teel accompanied Gillett to get the latter the privilege of a right of way from the owners of the land between the south end of the island and the highway in Brown county. Certain deeds were executed by the owners giving Gillett such right of way. One of them was introduced in evidence in which Gillett was named as grantee, containing the provision that the deed was to be void unless Crooked creek was straightened by cutting the ditch across the neck within eighteen months.

Some time after Teel and Gillett exchanged deeds Teel caused to be dug a ditch about forty feet wide and about

five feet deep, but having a still deeper cut in the center, across the neck of land, which caused the water of the creek to go almost in a straight direction instead of making the detour it before made, thus leaving the island entirely to the south of the main stream, although some water still stands, at times, in the old bed. The evidence shows that while this ditch was being dug appellant protested to appellee against its construction and made an attempt to stop the work by filling up the ditch, but it was eventually constructed, and is now, as we understand, carrying most of the water of Crooked creek. A small stream called Snyder branch, the mouth of which is shown on the plat, flows north into Crooked creek at the westerly end of the island. In times of rain it becomes full and runs rapidly, bringing down considerable sediment and driftwood, but being of no great length or size the water quickly subsides. The evidence is to the effect that when Crooked creek ran in its old channel the water from Snyder branch would add to the overflow of the island. Appellant claims that the construction of this ditch and the consequent drying up of Crooked creek between the cut and Snyder branch will cause that branch to deposit sand and driftwood on his land and seriously interfere with it for farming purposes. The weight of the evidence, however, is to the effect that this cut-off will lessen the liability of the island to be overflowed and that the water from Snyder branch will do no greater injury to it than theretofore.

Appellant testified that before he and Teel executed said contract, and especially at and before the time the deeds exchanging the land were executed, Teel told him that he (Gillett) could have a right of way for a private road sixteen feet in width from the island to the public highway to the north but that he (Teel) did not wish to burden the deed by inserting an agreement to that effect. Appellee testified they talked about the effect this ditch would have on passing to and from the island, and agreed that for sev-

eral years it would be very difficult to get out after the ditch was cut until the old creek bed filled so that Gillett could get out to the south; that he told Gillett that until the ditch was dug he might use this right of way as before, in going to and from the highway to the north. Teel's testimony on this point is strongly corroborated by that of several of the witnesses who were present at the public meeting above mentioned. He also was strongly corroborated by the grantor in a deed giving appellant a conditional right of way from the island to the road south. This witness (Whited) stated that when appellee and appellant came to him in regard to this deed appellant said to him, in Teel's presence, that the latter was to give him a right of way to the road north until this ditch was cut through across the neck. Gillett did not deny this testimony of Whited. Teel's testimony is also indirectly corroborated by the fact that Gillett, before filing this bill, had filed a written petition with the highway commissioners on three different occasions asking for a private and public road from the island to the highway to the north,—the route in which he now claims he has a perpetual easement. The evidence shows that a short time after this cut-off was constructed, and until carried out by high water, a temporary bridge extended over it along the line of this alleged easement. The evidence fails to show who constructed this.

Counsel for appellant contend that Gillett is entitled to a perpetual easement for a private way over Teel's land, between appellant's land and the road to the north, as a matter of necessity, under the facts in this record. For the purposes of this case, on the facts proved, it may be assumed that appellant would be entitled to such easement if he had not executed the agreement of April 24, 1909, containing the provision that either party had a right to cut a channel for Crooked creek across said neck. As a general rule, a deed made in full execution of a contract for the sale of land merges the provisions of the contract in the

deed, but this is not always the result.   If a deed made in
pursuance of a contract embraces all the subjects contained
in the contract the prior agreement merges in the deed and
the agreement can only be resorted to for the purpose of
evidence between the parties.   An executory agreement, ver-
bal or written, for the performance of distinct and separate
provisions is not merged in or superseded by a subsequent
deed in execution of a part, only, of such provisions.   In
such a case the prior contract is superseded only as to such
of its provisions as are covered by the conveyance and re-
mains in full force as to its other provisions.   (*Laflin* v.
*Howe,* 112 Ill. 253; *Platt* v. *Ætna Ins. Co.* 153 id. 113;
13 Cyc. 617, and cited cases.)   This court had under con-
sideration in *Shelby* v. *Chicago and Eastern Illinois Rail-
road Co.* 143 Ill. 385, a transaction very similar, in many
of its facts, to the one we are here considering, and the
court there held that where a party owning an island in a
river, and adjoining land, agrees in writing to sell a part
of the island for picnic grounds and to maintain two dams
on the river so as to keep up a pond for boating purposes,
and thereafter makes a deed for the land sold, if the agree-
ment to maintain the dams is not incorporated in the deed,
it will not be merged in the deed or affected by it and may
be enforced.   Manifestly, the provision of the agreement to
construct a ditch, under these authorities, was not merged
in the deeds exchanging the lands, and hence can be en-
forced in accordance with the intention of the parties when
the agreement was executed.   This seems to be conceded
by counsel on both sides of this litigation, and they have
argued the case on this basis.

　　Counsel for appellant claim that construing this contract
as to cutting the channel it must be held that if appellee did
the work he must provide means for appellant to cross this
channel to and from his land.   Nothing is said in the con-
tract itself as to constructing a bridge or other means of
crossing said ditch.   The contract provided that Gillett had

272 – 8

the right to dig this channel if he wished to. Certainly, if he constructed the channel no one could argue that Teel would be obliged to build a bridge over it. Considering the language of the contract, fairly construed, it seems to us it did not require appellee to build a bridge or provide any other means of crossing over the channel when cut, whether such ditch was constructed by appellee or by appellant. Had that been the intention of the parties to the contract it would have been a very simple matter to have so provided in specific words in the contract itself.

Both parties have introduced oral testimony as to the intention of the parties in executing this contract for the exchange of lands. Courts always seek to discover and give effect to the intention of the parties in carrying out or enforcing any contract, and for the purpose of ascertaining this intention will endeavor to place themselves in the position of the contracting parties, so that they may understand the language of the parties in the sense in which they used it. (*Field* v. *Leiter,* 118 Ill. 17; *Whalen* v. *Stephens,* 193 id. 121.) When the terms of a written agreement are in any respect uncertain or doubtful and the contracting parties by their own conduct have placed a construction upon the provisions of such contract which is reasonable, such construction will be adopted by the court, and evidence of acts showing a practical construction of the instrument by the parties themselves is admissible. (*McLean County Coal Co.* v. *City of Bloomington,* 234 Ill. 90; *Walker* v. *Illinois Central Railroad Co.* 215 id. 610; *Purcell Co.* v. *Sage,* 200 id. 342.) The proof tends to show that the consideration stated in each deed was a fair price for the land therein conveyed. It would be most unreasonable to hold that appellee in this trade would not only pay a fair price for the land purchased, but in addition would assume an obligation to construct a bridge at a cost equal to about half the value of the land purchased by him; to spend from $3000 to $6000 for the convenience of land which he sold for $840.

If the court places itself in the position of the contracting parties here, in view of all the facts and circumstances surrounding them at the time of executing it, said contract can not properly be construed as contended by appellant. Moreover, if we assume that the provision of this contract as to constructing this channel is at all ambiguous or doubtful, the extrinsic evidence in the record shows, practically without any controversy, that until the beginning of work on this ditch both parties to this litigation understood that the contract did not require appellee to build such bridge and by their acts had so practically construed this contract. Appellant had obtained conditional deeds or contracts for a right of way to connect with the road south of the island provided such channel was dug, and the testimony shows, without contradiction, that he stated, when such documents were executed, that under his agreement with the appellee he was only to have a right of way from the island to the road north until the ditch was dug. The testimony also shows, without controversy, that he was one of the promoters of the project for digging this ditch, but that he stated he did not want to give any cash, as his contribution would be the inconvenience he would be under after the ditch was constructed until the old channel filled up and he could get to a highway in another direction. Then, too, he showed clearly that he did not consider appellee liable to construct this bridge by filing petitions at three several times with the highway commissioners for a road from the island across the land of appellee to the highway on the north, evidently being of the opinion that if his petition was allowed the public would be at part or all of the expense of constructing the bridge over such cut-off.

For the reasons stated, the trial court, under the facts of this case, rightly dismissed the bill for want of equity.

The decree of the circuit court will be affirmed.

*Decree affirmed.*