South Parkway Building Corporation, an Illinois Corporation, Plaintiff-Counter-Defendant, Appellant, v. South Center Department Store, Inc., Formerly Known as Meadows Mercantile Corp., an Illinois Corporation, Defendant-Counter-Plaintiff, Appellee.

Gen. No. 47,331.

First District, Third Division.
June 27, 1958.
Released for publication October 23, 1958.

Thompson, Raymond, Mayer, Jenner & Bloomstein, and Edward L. Vollers, all of Chicago (Anan Raymond, Albert E. Jenner, Jr., and Prentice H. Marshall, of counsel) for plaintiff-counter-defendant-appellant.

Theodore Revzan, and Mayer Goldberg, of Chicago (Burton Berger, and Marvin Sacks, of counsel) for defendant-appellee.

JUSTICE BRYANT delivered the opinion of the court.

This case involves the construction of the granting clause of a lease. The lease was executed on June 24,

1952 between South Parkway Building Corporation, as lessor (that corporation is the plaintiff-counter-defendant-appellant, hereafter referred to as the lessor), and the Meadows Mercantile Corp., as lessee (that corporation's name was subsequently changed to South Center Department Store, Inc., and is the defendant-counter-plaintiff-appellee hereafter referred to as the lessee).

The premises demised are described in the granting clause in five different ways:

(1) "the premises known as 419–429 East 47th Street, Chicago, Illinois"

(2) "being the entire premises presently occupied and utilized by South-Center Department Store"

(3) "consisting of three floors and basement space in the northeasterly part of the building located at the southeast corner of East 47th Street and South Parkway in Chicago, Illinois"

(4) "having a frontage of about 144 feet on East 47th Street"

(5) "which demised premises are more particularly shown on the plat thereof hereto attached marked 'Exhibit A'."

It is obvious that description number 2—"being the entire premises presently occupied and utilized by South-Center Department Store," is a description which is not self-determining, and can only be determined by taking extrinsic evidence. When the plat attached to the lease and made a part thereof is considered, the lease itself discloses certain inaccuracies and ambiguities in the granting clause.

As to the first description: "the premises known as 419–429 East 47th Street, Chicago, Illinois," the plats indicate that that is an accurate description as to first, second and third floors, but that it is inaccurate as to

17

the space agreed by all parties to be demised by the lease as to the basement, in that the boiler room of the entire building would fall within that legal description in the basement, and is excluded from the demised premises by general agreement, and that there was additional space in the basement not covered by that legal description which, it is agreed by all, is part of the demised premises.

The third description, "consisting of three floors and basement space in the northeasterly part of the building located at the southeast corner of East 47th Street and South Parkway in Chicago, Illinois," has exactly the same discrepancies as the first description. The street address, 419–429 East 47th Street, is in the northeasterly part of the building, but the boiler room is also located in the northeasterly part of the building in the basement, and there is additional basement space which runs nearly to the northwesterly extreme part of the building, which is not in controversy. The first, second and third floors are in the northeasterly part of the building.

The fourth description, "having a frontage of about 144 feet on East 47th Street," has exactly the same discrepancy, when referred to the plat contained in the fifth description, as descriptions numbered 1 and 3: that is, the first, second and third floors have a space facing on 47th Street of about 144 feet, and the basement property on 47th Street is much greater than that.

The lessor objects to the introduction of extraneous evidence on the basis that it is not necessary in view of the fifth description of the premises in the granting clause, which refers to a plat.

The second description in the granting clause, "being the entire premises presently occupied and utilized by South-Center Department Store," is, in the main, in agreement with this description referring to the

18

plats. It is agreed that the South Center Department Store did not at that time occupy and utilize the boiler room, as shown on the plat of the basement, which boiler room was at the street address of 419–429 East 47th Street in the northeasterly part of the basement of the building located at the southeast corner of East 47th Street and South Parkway and was in the part of the space having a frontage of about 144 feet on East 47th Street. It is also agreed that the South Center Department Store did occupy and utilize the space in the basement shown by the plat and marked "Department Store": that is, a corridor running along 47th Street, and a storeroom west thereof, also fronting on 47th Street, and that these premises were not within the street address 419–429 East 47th Street; they were not in the northeasterly part of the building, and they were in excess of the frontage of 144 feet on East 47th Street. The right of the lessee to these premises is not in controversy. They are covered both by the second description and the plat.

 It is clear that the ambiguities which exist in regard to the granting clause are latent, not patent. They are latent because additional information has to be determined to show the ambiguity. The street address description is perfectly clear until it is considered with certain other descriptions and the fact that certain premises were used or utilized by the department store and that certain premises were marked as being covered by the lease on the plats. The same is true of the location in the building description and the frontage on 47th Street description. The ambiguity is also discovered when evidence is taken as to what these various street addresses, parts of building and frontage on 47th Street actually mean and what the plat shows and what the "use" description means. The law in regard to this matter is clearly discussed in People ex rel. Beedy v. Regnier, 377 Ill. 562, 565:

19

"A latent ambiguity occurs where a writing appears on its face clear and unambiguous, but which, in fact, is shown by extrinsic evidence to be uncertain in meaning, or where a description apparently plain and unambiguous is shown to fit different pieces of property. In such case, the ambiguity being raised by extrinsic evidence, the same kind of evidence may be admitted to explain or identify the property referred to in the writing." ·

It and certain rules of construction are also discussed in Allendorf v. Daily, 6 Ill.2d 577, 590–91:

"A latent ambiguity occurs where a writing appears on its face clear and unambiguous, but which, in fact, is shown by extrinsic evidence to be uncertain in meaning; or where a description apparently plain and unambiguous is shown to fit different pieces of property, and in such cases, the ambiguity being raised by extrinsic evidence, the same kind of evidence may be admitted to explain it or identify the property referred to in the writing. (Logue v. Von Almen, 379 Ill. 208; Weber v. Adler, 311 Ill. 547; Harmon v. People ex rel. Munsterman, 214 Ill. 454.) A latent ambiguity in a contract can be explained by parol evidence. (Higinbotham v. Blair, 308 Ill. 568.) In construing a written instrument the court may place itself in the parties' position to ascertain their intent from the language used. (Gillett v. Teel, 272 Ill. 106; Close v. Browne, 230 Ill. 228.) Deeds should be construed most favorable to the grantee and the intention of the parties is the test by which to determine the effect of a deed, including the description therein. (Brenneman v. Dillon, 296 Ill. 140; In re Estate of Frayser, 401 Ill. 364.)"

It is therefore clear that the trial court did not err when it permitted evidence to be introduced showing the situation of the parties at the time the lease was

20

executed, the use of the disputed storerooms before the execution of the lease and thereafter, or any other collateral matter which shed light upon the intention of the parties at the time the lease was executed.

There is practically no dispute in regard to the surrounding circumstances and facts relating to the execution of the lease and the use of the property. Prior to the execution of the lease a corporation known by the same name as the present name of the lessee, that is, South Center Department Store, operated a department store in the premises. It was affiliated with the lessor. Negotiations had been consummated for the sale of the mercantile business to the lessee, conditioned upon lessee obtaining a lease from the lessor for the premises involved.

The controversy relates to five storerooms on the westerly side of the building adjoining South Parkway. These storerooms are not indicated on the basement plat as being used by the department store or as being within certain red lines which indicated the premises covered by the lease. They all are entered off a separate corridor or from stairways leading to the space above them facing on South Parkway. At the time the lease was executed five of those storerooms were occupied and utilized by the South Center Department Store. Representatives of the lessee were shown that space and explanation made that it was being used by the South Center Department Store at that time. For about six days prior to the execution of the lease representatives of the lessee were constantly in the premises checking inventories and were in and out of these storerooms for that purpose. It is not disputed that for a period of time prior thereto those five storerooms had been occupied by the South Center Department Store as storerooms in the operation of the merchandising establishment. Nor is it disputed that from the date of the execution of the lease those

21

storerooms were occupied by the lessee until the early part of 1957 without paying any rent in addition to that specified in the lease. It is also not disputed that the plat of the basement had one error in it, in that there was not shown on the plat in the basement a door which had been constructed between the department store storeroom and the corridor which opened into these five storerooms. This door made the storerooms accessible to the department store storeroom, which they would not have been without its construction. It is also not disputed that the department store, throughout, was covered by an A. D. T. alarm system, and that system had not been made applicable to the five storerooms involved, and that the lease required the department store (the lessee) to pay for the electricity in the premises occupied by it and that no arrangement had been made for the store to pay the electric bills for those storerooms. The only question to be decided, then, is whether description number 2, "being the entire premises presently occupied and utilized by South-Center Department Store," or description number 5, which reads "which demised premises are more particularly shown on the plat thereof hereto attached marked 'Exhibit A'," is controlling. In view of the facts admitted, these two descriptions are clearly in conflict.

It is urged by the lessor that because the granting clause included the fifth description, "which demised premises are more particularly shown on the plat thereof hereto attached marked 'Exhibit A' and identified by the signatures of the parties thereto," that that rendered the premises demised so definite that the plats must control and that all the premises marked on the plat at the time of the execution of the lease must be granted to the lessee, and that no portion of the premises not so marked can be included in the

demise to the lessee, and therefore there is, and can be, no ambiguity.

It is undoubtedly the law in Illinois that a plat which is referred to in an instrument of conveyance is made a part of that instrument and must be read as a part of it. In Louisville & N. R. Co. v. Koelle, 104 Ill. 455, a plat not incorporated in but referred to in the deed was used in the construction of the deed as a part of the conveyance in order to give effect to the intention of the parties. In People ex rel. Cameron v. New, 214 Ill. 287, where a legal description in a petition for the organization of a village—where the property must be contiguous—had been defective in that it had referred to "the north three-fourths" instead of the "south three-fourths," a plat which was attached to the petition was used for the purpose of correcting the scrivener's error and giving effect to the intention of the petition.

The lessor also urges that if the grant is not precise in the description of the premises, but the plat is clear and unequivocal, the parties are bound by the boundaries shown by the plat. To make such reasoning binding in the instant case would require that we hold that description number 2, "being the entire premises presently occupied and utilized by South-Center Department Store," is not a precise description, and that, although there is at least one error in the plat which relates to this very question of usage, that the plat is clear and unequivocal. It cites as authority for that position Piper v. Connelly, 108 Ill. 646. That case involved the question as to whether a conveyance of land followed the thread of the stream in the Desplaines river or whether it followed the south bank. The part of the granting clause which is important is as follows: "thence north along said section line 717 feet to the south bank of the Desplaines river; thence south 47

deg. west along said south bank 1360 feet." There was a map drawn on the back of the deed. It showed a straight line, without any meanderings for the Desplaines river. However, in that case there had been an antecedent contract which had stated: "Together with all water privileges, rights and immunities of the said party of the first part therewith connected." The court in discussing this granting clause, along with the plat, said that the clause in the contract "renders it absolutely certain it was not then intended that the defendants' rights should terminate at the water's edge." The court also relied heavily on the doctrine that when conveyances relate to rivers there is a presumption that the boundary follows the thread of the stream. Quoting from an old English case, it stated as follows:

" 'where the grant to the riparian proprietor has no other boundary on the side thereof which is adjacent to the river but the stream itself, the legal presumption is, that his grantor intended to convey to the middle of the stream.' "

In that case, of course, the court considered an earlier document relating to the transfer, and rules of law, to reach the intention of the parties—certainly in derogation of the exact words of the conveying clause, and probably in derogation of the plat itself, for it would be doubtful if the thread of the stream was a straight line for 1360 feet. In the case of Trustees of Schools v. Schroll, 120 Ill. 509, cited by lessor, the rule was reasserted that when there is reference to a plat in a deed, it becomes a part of the conveyance as much as if it had been copied in the deed, and both Piper v. Connelly and Louisville & N. R. Co. v. Koelle, supra, are cited as authorities for that proposition. In Merle v. Beifeld, 275 Ill. 594, the court had before it the question whether an agreement with the White City company, which gave the plaintiff the exclusive right to

24

sell certain products, included all of the White City property when it referred to certain exact space upon which the plaintiff was going to erect a restaurant, and held that the exclusive grant to sell certain products was not throughout the White City but related to the specific land which had been set aside for plaintiff on which to construct its building. This related to the application of the exclusive grant to sell products, and there was no dispute as to the land set aside on which the plaintiff was to build its restaurant, as to its area or dimensions, and the case is therefore clearly distinguishable from the present one.

In Peoria Gas & Elec. Co. v. Dunbar, 234 Ill. 502, where a plat was introduced into evidence showing the size of a lot which had as one of its boundaries a natural river, it was held that the distances marked on the plat would not be controlling but that extraneous evidence could be given as to the present size of the lot and that it had been lengthened by virtue of accretions to the river's edge. This clearly indicates that although the plat had become a part of the deed, extraneous evidence is admissible to prove the exact extent of the demised premises. By a consideration of these cases it seems clearly established that the incorporation of a plat directly in a document, or by reference thereto, makes it a part of the document for the purpose of construction of the intention of the parties in relation thereto, but is not exclusive of any extrinsic evidence which tends to establish the intent of the parties, or of any principle of law which affects the legal meaning.

The cardinal rule in the interpretation of a lease is that the court should ascertain and give effect to the intention of the parties, and that in so doing the court may take into consideration the position of the parties, the surrounding circumstances which existed at the time of the execution of the lease,

25

as well as the purpose or object the parties had in mind in entering into the lease, and, where there is any doubt or uncertainty as to the meaning of the language used in a lease, it should be construed most strongly against the lessor and in favor of the lessee, and that the mutual conduct of the parties after the lessee has taken possession of the premises may be considered in determining the meaning of the provisions of a lease. 24 I. L. P. Landlord and Tenant, secs. 42, 43, 44 and 47. In Wistain v. Phillips Petroleum Co., 349 Ill. App. 365, the court said:

"The intention of the parties controls the construction and must be determined from the language employed in the light of the complete lease, the positions of the parties, and the surrounding circumstances. Knowles Foundry Co. v. National Plate Glass Co., 274 Ill. App. 570, 577. The construction should be reasonable, the most equitable to the parties, and should give neither an unfair advantage. Llewellyn v. Board of Education, 324 Ill. 254, 259."

And in Waukegan Times Theatre Corp. v. Conrad, 324 Ill. App. 622, at p. 640, the court said: "Where construction of a lease is doubtful, the practical construction by the parties may be resorted to. (United States Brewing Co. of Chicago v. Wolf, 181 Ill. App. 509.)" In Gale v. United States Brewing Co., 181 Ill. App. 381, 387–388, the court said:

" 'The court will, if necessary, put itself in the place of the parties, and read the contract in the light of the circumstances surrounding them at the time it was made, and of the objects which they then evidently had in view. So, also, the acts of the parties themselves, indicative of their construction placed upon it, may be resorted to for the purpose of determining the true meaning of the written agreement. And in this regard it makes no difference whether such acts are contemporaneous or subsequent.' Street v. Chicago

Wharfing Co., 157 Ill. 605, 613, 614. And the preliminary negotiations between the parties may, in some cases, be considered for the purpose of determining the meaning and intention of the parties in the use of the words employed in the instrument. Chicago Auditorium Ass'n v. Fine Arts Bldg., supra."

It is to be noted that the court quoted the exact language of Street v. Chicago Wharfing & Storage Co., 157 Ill. 605, and Chicago Auditorium Ass'n v. Fine Arts Bldg., 244 Ill. 532. Of the same tenor is David v. Schiltz, 415 Ill. 545, 551, Henry v. Metz, 382 Ill. 297, 300–301, Forest Preserve Dist. of Cook County v. Lehmann Estate, Inc., 388 Ill. 416, 421, and Goldberg v. Pearl, 306 Ill. 436, 440. The authorities above cited are sufficient to establish beyond doubt the general rules of construction which we have enunciated.

This proceeding was originally a suit in the Superior Court of Cook County to enjoin the lessee from interfering with the construction work to be done in the basement by the lessor. Simultaneously with the filing of this proceeding an action of forcible detainer in the Municipal Court of Chicago was filed by the lessor to obtain possession of the five basement storerooms in controversy. The lessee counterclaimed in the Superior Court equity suit, alleging the pendency of the Municipal Court action seeking possession of the five disputed basement storerooms and urged a construction of the lease which would sustain its contention. Issues raised by the initial complaint were settled during the trial and a stipulation was entered into between the parties under which the lessee vacated the premises—that is, the five contested storerooms, and the lessor agreed to make certain arrangements for substituting other space and for alternate charges, depending upon the outcome of this litigation.

After a complete hearing, including the taking of testimony and the argument of counsel, the court made

27

certain findings—some of fact and others apparently applications of the legal rules of construction to the facts. He found (1) that on June 24, 1952, the date of execution of the lease, South Center Department Store occupied and utilized the five basement storerooms in the lessor's building, along the South Parkway frontage thereof; (2) that the five basement storerooms were included within the premises demised and leased by the plaintiff; (3) that the lessee had continuous and exclusive occupancy of the five disputed storerooms from the date it took possession of the department store in 1952 until the filing of the counterclaim, and concluded that the lessee had the right to possession of at least a majority of the five storerooms, and the decretal part of its decree was in accordance with those findings. It is from that decree and those findings that the lessor appeals.

 This court should not substitute its opinion for that of the trial court as to the facts unless the finding of the trial court is manifestly against the weight of the evidence. Wear Proof Mat Co. v. Bastian-Morley Co., 268 Ill. App. 455, 464. Here the evidential facts are not controverted, but the effect of those facts upon the ultimate fact of the mental state of the parties at the time of the execution of the lease, which is the intent, is disputed. The ultimate question of fact here is whether it was the intention of the lessor and lessee, at the time of the execution of the lease, that the five storerooms should be included in the demised premises, and the trial court has found that that was the intention. That finding is clearly sustained by the evidential facts. Recently the Supreme Court said in Johnson v. Fulkerson, 12 Ill.2d 69, 75:

"Where a cause is heard by a chancellor without a jury, his conclusions on facts are entitled to the same weight as a jury's verdict. These cardinal principles

28

are especially controlling in this case. The chancellor here not only was able to observe and hear the witnesses, but was conversant with local conditions, the customs and economies of the farm and oil industries, the value of farm land and farm crops. His position of advantage in a search for the truth is infinitely superior to that of a tribunal where the sole guide is the printed record."

There can be no controversy here over the court's application of the law once the fact of the intention had been determined. The decree of the trial court will be affirmed.

Affirmed.

FRIEND, P. J. and BURKE, J., concur.