MARSHALL FIELD

*v.*

LEVI Z. LEITER.

*Filed at Ottawa May 15, 1886.*

1. PARTY WALL—*what will constitute a party wall—a contract construed.* A and B owned a city lot lying north and south 189 feet,—A the west half, and B the east half. A had a five-story building upon his part of the lot, 100 feet deep, the east wall of which, twenty inches thick, was on the division line, so that the center of the wall was on the line dividing the lot. B, being desirous of erecting a ten-story building on the east half of the lot, of greater depth than the other building, a written agreement was entered into, giving B the right, in constructing his building, to use for that purpose, as a party

2—118 ILL.

wall, with the right to add to the height thereof, as much of A's east wall as B might desire, the latter agreeing to strengthen the same to prevent any injury to A, and it was covenanted that A should have the right to use, as a party wall, the additional height, by paying what was just and equitable therefor: *Held,* that by the agreement the east wall of A's building became a party wall, and that the extension of that wall for the new building, and the addition to the height of the old wall when completed, would also become a party wall, in the strictest sense, with the usual easement of support.

2. SAME—*rights of adjacent proprietors, as to the use of a party wall.* The law will treat a party wall as a structure for the common benefit and convenience of both the tenements it separates, and either party will be allowed to make any use of it he may desire, either by deepening the foundations or increasing the height, so far as it can be done without injury to the other.

3. SAME—*contract construed—as to strengthening wall and foundation.* The owner of a five-story building entered into a written agreement with the owner of an adjoining lot on the east, whereby the east wall of the building then on the dividing line, should be a party wall. It was provided therein that the owner of the lot on the east might add to the height of such wall, making it high enough for a ten-story building, he agreeing to strengthen such wall and the foundations thereof, "by making such additions thereto upon the east side thereof as may be required to prevent any and all injury" to the other party's building: *Held,* that the words, "upon the east side thereof," applied only to the wall,—not to the foundation of such wall,—and that in strengthening the foundation, the party doing so was not confined to his own premises east of the party wall, but had a right to strengthen it by increasing the base, in width, on both sides of the wall.

4. CONTRACT—*rule of construction.* It is the duty of courts, in construing all written instruments, whether specialties, simple contracts, or wills, when practicable to do so, to discover and give effect to the intention of the parties, so that performance of the contract or other instrument may be enforced according to the sense in which it was mutually understood at the time it was made.

5. Such construction will be adopted, when it can consistently be done, as will render the contract or other instrument capable of execution, rather than one that will render it inoperative, and regard should also be had to attendant circumstances, in construing written instruments.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. THOMAS A. MORAN, Judge, presiding.

The original bill in this case was brought by Levi Z. Leiter, against Marshall Field, and is for relief and for an injunction. After answering the original bill, defendant filed a cross-bill, in which he also asked for affirmative relief, and for an injunction, concerning the matters involved. On the hearing in the circuit court, the cross-bill of defendant was dismissed, and relief decreed substantially as asked for in the original bill. That decree was affirmed in the Appellate Court for the First District, and defendant brings the case to this court on his further appeal.

Messrs. WILLIAMS & THOMPSON, and Mr. M. W. FULLER, for the appellant:

The right to build a new wall or to raise and enlarge an old one upon or near the line between two proprietors, carries with it the right of entry, for the purpose of laying the necessary foundations.

Field has authority to use Leiter's wall as a party wall, and to increase the height to meet the requirements of a ten-story building. This necessitates the broadening of the old foundation, or the construction of a new one, and the right of entry and support for that purpose is an indispensable part of the arrangement. The only limitation to this right is attached to the agreement of Field to prevent injury to Leiter's building. The mode of preventing injury and damage to the building is partially pointed out, but the right to construct the wall remains absolute and unqualified.

The right to increase the height necessarily involved the right to support such increase; and where the character of the soil requires a lateral extension, and a perpendicular extension is insufficient for the purpose, it is beyond question that one right would follow equally as well as the other. *Brooks* v. *Curtis,* 50 N. Y. 639; *Dananhauer* v. *Devine,* 51 Texas, 480; *Partridge* v. *Gilbert,* 15 N. Y. 601; *Matts* v. *Hawkins,* 5 Taunt. 20.

The party enlarging or repairing the party wall, to a certain extent, acts at his peril, and is liable for any damage that may be caused to the adjoining tenement of his neighbor by his negligence in performing the work; and he probably would be liable for any injury caused from any enlargement or change in the wall which was not a matter of necessity for the preservation of the wall itself. *Eno* v. *Del Vecchio*, 4 Duer, 65.

A grant, as of an easement, carries with it whatever is necessary for the use of the thing granted, and implies a license to enter on the premises of the grantor for use and repair. 1 Saund. 321; *Hinchcliffe* v. *Earl Kimoul*, Bingham's N. C. 13; *Standard Bank* v. *Stokes*, L. R. 9 Ch. D. 68; *Colbeck* v. *Gundlers Co.* L. R. 1 Q. B. D. 234; *Partridge* v. *Gilbert*, 15 N. Y. 601; Washburn on Easements, 30; Shep. Touch. 89; Plowd. Com. 16 a.

Messrs. ISHAM & LINCOLN, for the appellee:

A wall built in common between two properties effects no transfer of land when the amount contributed by each is known.

In the absence of contract, ownership of wall ensues according to title of land on which it stands.

When two persons are owners in severalty of the moieties of a party wall with cross rights of easement, neither can pull down his own portion of the wall without being liable for disturbing the rights of the other. Hunt's Law of Boundaries, 113-116; Tyler's Law of Boundaries, 117; *Wiltshire* v. *Sidford*, 8 B. & C. 258; *Cubitt* v. *Porter*, id. 262.

As to the relative rights of the proprietors of a wall owned in common, and the mutual servitudes of their properties, see *Eno* v. *Del Vecchio*, 4 Duer, 65; *Brooks* v. *Curtis*, 50 N. Y. 641.

The agreement is expressly confined in terms to the use as party wall of the existing wall solely, and to its extension up-

ward. License to use "so much of the wall already built," precludes the idea of more wall or of any land.

This is not a contract for the building of a party wall for a ten-story building, and no implication involves the authority for such an invasion as has been made to take.footing for such a wall.

Mr. JUSTICE SCOTT delivered the opinion of the Court:

Although this case has been elaborately argued by the respective counsel, it is thought no extended discussion is necessary to an understanding of the decision to be rendered. The parties are owners of contiguous properties, each extending southward from Monroe street a distance of one hundred and eighty-nine feet, and the issue made by the pleadings is as to the right of defendant to strengthen the foundations of an existing wall on the line separating the land owned by the respective parties, so that it may support an additional wall, which, it is conceded, defendant, Field, has the right to erect, under the contract of the 28th day of April, 1884. The contention between the parties relates exclusively as to the mode of strengthening the foundation of the existing wall upon the division line at the time of the making of the contract.

Much light will be shed upon the subject of inquiry by reference to the previous condition of the property before defendant became the owner of that part which he now proposes to improve. In 1878, complainant, who was then, as now, the owner of the property west of the division line where the controversy exists, erected thereon a five-story building. The east wall extends south from Monroe street about one hundred feet, and is about twenty inches wide, and is built as one would build a party wall, half of its thickness on his own land and half on the land then owned by defendant's grantor. It is not claimed that complainant had any party wall con-

tract with the adjoining owner prior to erecting the wall as was done, but it is alleged, as no doubt the truth is, that the adjoining owner made no objection to the wall being erected in the manner as is usual, with the party walls partly on its lands, and with the usual support therefrom. After this wall had been thus erected by complainant, the east half of the lot was purchased by defendant. The evidence tends to show the wall, erected by complainant partly on his own land and partly on land now owned by defendant, was, no doubt, constructed under the belief it would be adopted by the adjoining owner as a party wall. It had its centre line very near over the line dividing the respective properties, with the usual support on either side of the dividing line. But prior to the making of the contract, which will be the subject of consideration further on, it had not been agreed upon by the adjoining proprietors as a party wall. The suggestion of counsel might be adopted, that before that time "the wall was not a party wall, in any sense." But whether it was or not, is a matter of no consequence, in the view that will be taken of the case. In 1884, defendant purposed to build upon his property, and wished, as counsel expresses it, to use the existing wall, and to provide for a new party wall along the remaining part of the dividing line. Accordingly, the contract of the 28th of April was entered into and mutually signed. The agreement is between Levi Z. Leiter, of the first part, and Marshall Field, of the second part, and after reciting that the parties to the contract are the owners, one of the east half and the other of the west half of lot 3; that complainant had heretofore erected upon the west half of the lot a brick building, the east wall of which, running back one hundred feet, more or less, from the north line, stands partly upon the east half and partly upon the west half of such lot, and that defendant is about to erect upon the east half of the lot a brick and stone building of about ten stories in height, and is desirous of using a part of the wall of the building owned

by complainant, in the construction of his building, and of erecting so much of the west wall of his building as shall extend south of said east wall, so that the centre line thereof shall coincide with the dividing line between the east and west halves of such lot, then comes the following paragraph, out of which the principal difficulty in the case arises : "Now, therefore, in consideration of the premises, it is hereby covenanted and agreed between said parties, that the said party of the second part, in constructing his said building upon the east half of said lot 3, may use for that purpose, as a party wall, (with the right to add to the height thereof,) so much of the east wall of said Leiter's building as he may desire, said party of the second part hereby agreeing to strengthen said wall, and the foundations thereof, by making such additions thereto upon the east side thereof as may be required, to prevent any and all injury or damage to said Leiter's building, by reason of the use of said wall by said Field."

It is admitted that after the making of this agreement, the existing wall became, by the contract, a party wall, and that the proprietors had the cross-easements, and such other rights as are usually incident to party walls. While this much is conceded, it is insisted no right to add to the height of such party wall existed, otherwise than as such right is given by the contract. The argument then assumes the contract simply confers on defendant a license or privilege to use the existing wall in the construction of his building, but that the added height does not become a party wall, with the usual easements of supports and other party wall rights. This view can hardly be adopted. There is no controversy that the new wall to be erected south of the existing wall on the dividing line, is to be, and will be when constructed, a party wall, in the strictest sense, and will have the usual easement of support on either side of the dividing line. Here, then, it is conceded, the original wall erected by complainant became, by the contract, a party wall, and that all of the

wall south of the existing wall, to be erected under the contract, is a party wall, with all the incidents of party walls, so that all the wall on the entire line would be confessedly party wall, except the additional height defendant may make to the existing wall. This construction seems unreasonable, and ought not to be adopted unless the contract will bear no other. It would seem the wall must be a "party wall" from the foundation to the top, or not at all. It is difficult to believe the parties contracted for a party wall for half its height, and that the remaining portion should not be. But the context shows the agreement made was more than a mere license or privilege to use the existing wall. It is seen the contract contains a covenant that complainant shall "have the right to use as a party wall any additional height which shall be added by" defendant "to the east wall" of complainant's building, upon condition he shall pay therefor "such sum as shall be just and equitable." This is a covenant for an interest in the wall as a "party wall," and that conclusion is strengthened by the further consideration it is provided the agreement shall be construed "as a covenant running with the land."

Such a covenant would be unusual in a contract for a mere license or privilege. Reading the context, with this clause of the agreement, it is not accurate to say it is a contract for the use as a party wall of the existing wall. It is more than that. It is a contract that when the existing wall shall have been raised, it shall be a party wall,—the additional wall as well as that which had been constructed by complainant. It is said this is not a contract to build a party wall. It is true the contract contains no express undertaking on the part of defendant that he will construct the wall under the agreement, but it is not perceived how that fact militates against the view the wall shall be a party wall when erected. In this respect there is no difference between the provisions concerning the north end of the line, where the existing wall was

standing, and those concerning the south end, where complainant had no building erected. In the latter case, the provision is, defendant may build a party wall, but he was not obligated to do so. All agree, however, that when the south wall shall be erected it will be a party wall. The same provisions apply to the wall to be erected on the north end of the division line. In erecting his building, defendant may use for that purpose, as a party wall, so much of the east wall of complainant's building as he may desire, "with the right to add to the height thereof." Add to what? Obviously to the height of the party wall. Is it possible that after the party wall is raised up by mutual agreement, only the original wall shall be regarded as a "party wall?" Such a construction is too narrow to be adopted. No one contends that since the making of the contract the existing wall is not a party wall, with all the easements pertaining to party walls. That being so, the express agreement defendant may add to the height of the wall, is equivalent to an express covenant the wall, with its added height, shall be in all its portions a party wall. The right given by the contract to add to the height of what is conceded to be a party wall, necessarily, by implication, gives an easement of support for such wall equally on either side of the line of ownership. One party may not have the benefits of a party wall without subjecting his property to all burdens incident to such walls. The right of support is one of the principal, and at the same time most valuable, rights arising out of the construction of party walls. A very satisfactory statement of the law on this subject is that contained in the opinion of the court in *Brooks* v. *Curtis*, 50 N. Y. 639, where it is said, after considering a number of cases, that the "fairer view, and the one generally adopted in legislative provisions on the subject, in this and other countries, is to treat a party wall as a structure for the common benefit and convenience of both of the tenements which it separates, and to permit either party to make any use of it

which he may require, either by deepening the foundations or increasing the height, so far as it can be done without injury to the other." The party making such change is obligated to observe care not to occasion injury to the adjoining owner, but the authorities generally seem to hold that in so far as he can use the party wall in the improvement of his own property without injury to such wall or the adjoining property, there is no good reason why he may not be permitted to do so. The contract between the parties in this case conforms to this view of the law, and harmonizes with it in all essential respects.

But the bill in this case is framed on another view of the meaning of the contract. It is, that in and by the contract it was intended to be, and was, provided, that the wall previously erected by complainant might be used as a party wall, and that in using it defendant might add to the height of such wall, and strengthen the same, and the foundations thereof, by additions made thereto upon the east side thereof, but that no authority was given to defendant to enter upon or appropriate any part of complainant's land west of the wall, or to put any constructions, buildings or foundations on any part thereof, or interfere with the possession thereof by complainant or his agents. This construction is not warranted even by a literal reading of this clause of the contract, and certainly not by its plain meaning, as gathered from a consideration of the whole instrument. There are a few rules of construction commonly observed in construing all written instruments, whether specialties, simple contracts, or wills. One is, it is the duty of the court, where it is practicable to do so, to discover and give effect to the intention of the parties, so that performance of the contract or other instrument may be enforced according to the sense in which it was mutually understood at the time it was made, and greater regard is to be had to the clear intent, when ascertained, than to any particular words which may have been used in the

expression of that intent. Another rule is, that such construction shall be adopted, if it consistently may be, as will render such contract or other instrument capable of execution, rather than to render it inoperative. Often, the attendant circumstances shed much light upon the subject of inquiry, and regard should be had to them in construing written instruments.

Applying these well understood rules, no serious difficulty will be experienced in ascertaining the meaning of that clause of the agreement out of which this controversy arose. It is seen, it provides, first, that the existing wall shall be a "party wall;" second, that additions may be made to its height; third, that such party wall shall be strengthened; and fourth, that its foundations shall also be strengthened. These things were all plainly within the contemplation of the parties, and they undertook to provide for them by their written agreement. All agree the existing wall, after the making of the agreement, became a party wall, and that authority was expressly given to defendant to add to its height. The contract in respect to these things is so clearly written it admits of no construction. It is evident, even from a casual reading of the contract, that both parties understood the existing wall was insufficient to sustain the additional weight it would be subjected to when defendant should add to its height, and that it would become necessary to strengthen it by additions thereto, and accordingly it was provided such additions should be made upon the "east side" of the wall, and not otherwise. So far there is no disagreement as to the meaning of the contract. Both parties agree the contract obligates defendant to strengthen the foundation of the existing wall to prevent injury or damage to complainant's building by reason of the use of the wall as a party wall, but how it should be done is the sole question concerning which there is disagreement. The insistence on the part of complainant is, that the foundation of the existing wall, which has now become a party wall, with all

the easements and incidents pertaining to such walls, can only be strengthened by additions "upon the east side,"—that it is so written in the agreement, and can not be done otherwise. The position taken seems so obviously erroneous it needs but little illustration. Had this contract been handed up for inspection without the elaborate arguments submitted, it seems improbable it would have occurred to this court it would bear the construction attempted to be given to it, and especially when considered amidst the circumstances where it was made. The foundation which it is provided should be strengthened, is the construction upon which the wall is to rest, and, of course, is beneath the dividing wall. If it is meant to insist the foundation could only be strengthened by extending the existing foundation towards the *east*, or, what is the same thing, by additions "upon the east side," that would be utterly impracticable, and it is apprehended few men knew better than the parties to this agreement when they entered into it, such a mode of strengthening a foundation would be an impossible undertaking, and no such absurd intention ought to be imputed to them. No possible additions that could be made solely to the east of the existing foundation, would render it reasonably secure or add any considerable strength to it, and no one ventured an opinion to the contrary. The character of the soil at the locality where these buildings are located, is such, it is necessary, when any great weight is to be placed on foundations, they should be spread to considerable width, in order to bear the pressure safely. All the architects examined as witnesses concur in the statement, a heavy wall like the one defendant has the right to construct, can not be supported on a foundation on soil of the character in that locality, unless the centre of the foundation falls beneath the centre of gravity of the wall, and that the inevitable result of a departure from that mode of constructing the foundation, would be the giving away of the walls, and perhaps the ultimate destruction of the buildings.

Outside of the testimony of these witnesses, skilled in this department of labor, this is an obvious fact, and is within the knowledge of all persons of any considerable experience in such matters, and doubtless the agreement to strengthen the foundations of the existing wall to receive the additional weight it was agreed might be placed upon it, was made with a knowledge of this fact, and in reference to it. It is sometimes allowable in construing contracts, and especially if the same are inartificially framed, to transpose the words, to make the meaning more apparent. That may be done to advantage in this case, so the contract may be read as if it were written, "to strengthen said wall by making such additions thereto on the east side thereof as may be required, and the foundations thereof, to prevent any and all injury or damage to said * * * building by reason of the use of said wall." This mode of rendering the contract makes its meaning clearer, and gives effect to all the words employed. The words, "east side," have an appropriate application to an upright wall, but they are inapt when applied to a mere foundation upon which the wall is to rest. It is seen, defendant is to strengthen the wall itself by additions upon the east side, and also to strengthen the foundation to prevent any and all injury or damage to complainant's building by reason of the use of the wall. How can defendant's obligation to strengthen the foundation, so as to prevent injury or damage by reason of the use of the party wall, be performed otherwise than in the ordinary and usual way of constructing foundations for party walls, where the adjoining properties shall each furnish the usual support? If this is not the meaning of the contract in this respect, then it has no meaning. All the testimony is to the effect, the foundation can not be strengthened except by spreading it to a considerable distance, so as to bear the additional pressure, and so that the centre of the foundation will fall beneath the centre of gravity of the wall. It seems incredible the parties to this agreement would ever have been

guilty of the absurdity of providing for strengthening the foundation of the existing wall simply by additions extending to the *east*. Either party would have known that would have been utterly ineffectual, and that the foundation could not be strengthened in that way. All contracts or other written instruments should have a reasonable construction, and all subtle distinctions not appreciable by the common mind should be disregarded. These parties did attempt to make a contract for the strengthening of the foundations to the existing wall, to render it sufficient to sustain the additional pressure it was to be subjected to, so as to prevent injury or damage to the buildings, and that contract should not be annulled by mere construction. A party ought not to be permitted to come into a court of conscience to demand equitable relief on the ground the words he used in making a contract, if construed strictly or literally, do not mean anything, and for that reason the contract is impossible of execution. Equity will look through the entire agreement, and discover and give effect to the evident intention of the parties to the contract, and enforce it as they must have understood its provisions when they made it. Disregarding all subtle reasoning as to the meaning of the words in the relation in which they are used, the common sense meaning of that clause of the agreement which obligates defendant to strengthen the existing foundation to prevent any and all injury or damage to complainant's building by reason of the use to be made of the wall as a party wall in the manner it was agreed it might be used, is, that it is to be strengthened in the ordinary and usual mode of constructing party wall foundations in the vicinage, where the adjacent properties is each made to furnish the usual easement of support. Any other construction would render the contract inoperative, and the grant of the use of the existing wall as a party wall, with the right to add to its height, would be a barren and useless grant.

Undoubtedly, the law is, the party making changes in party walls, when not required for mere purpose of repair, acts at his peril, and will be responsible for any damage that may be occasioned. With that qualification, he may use the party wall for the improvement of his own property. Following closely the law on this subject, defendant is obligated by the contract to prevent injury or damage to complainant's building by reason of the use he is permitted to make of the existing wall. Accordingly, before the original bill was filed, defendant notified complainant that before building further on the foundation of the wall in the front of the lot, he would remove the brick and stone foundations as they were then placed, and which were thought to occasion damage to the basement of complainant's building, and substitute iron, placing it entirely underneath the floor of the basement of the building. In that way it was thought a foundation could be constructed, of sufficient strength, without damage or injury to complainant's building, and without interruption to necessary sewerage or plumbing for the use of the same. That offer defendant repeated in his cross-bill, and in strengthening the foundation he should be confined to that mode of doing the work which will occasion the least inconvenience or damage to the building of complainant, by reason of the use of the existing wall.

The original bill should have been dismissed, and the relief which it is indicated in this opinion defendant is entitled to, should have been decreed to him on his cross-bill. The judgments of the Appellate and circuit courts will be reversed, and the cause remanded to the circuit court for further proceedings conforming to this opinion.

*Judgment reversed.*