THE R. F. CONWAY COMPANY, Appellant, *vs.* THE CITY OF CHICAGO *et al.* Appellees.

*Opinion filed June 22, 1916—Rehearing denied October 11, 1916.*

1. CONTRACTS—*courts will seek to discover and give effect to intention of the parties.* In construing contracts courts seek to discover and give effect to the intention of the parties, and for the purpose of ascertaining such intention will endeavor to place themselves in the position of the contracting parties, so as to understand the language in the sense in which it was used.

2. SAME—*when contractor is not required to repair pavement at his own expense.* Where a city designs the type of pavement and track construction to be used in rebuilding street car tracks and re-paving the right of way, and the paving contractor is not consulted but constructs the work strictly according to specifications and the work is accepted, the contractor is not bound, at his own expense, to repair defects in the pavement caused by the use of much heavier street cars than had formerly been used, even though the contract provides that "as a guarantee of the faithful performance of these specifications, the quality of the materials furnished and the proper construction of said improvement the contractor hereby agrees to keep and maintain said improvement" in good condition for a period of five years, as such guaranty extends only to defects due to the character and quality of the materials and workmanship. (*City of Lake View* v. *MacRitchie*, 134 Ill. 203, distinguished.)

3. SAME—*a guaranty of design or plans and specifications will not be inferred.* While a public contractor may guarantee that the designs, plans and specifications furnished by the city, with the making of which he has had nothing to do, may be sufficient for the purpose intended, yet such guaranty must be clearly expressed and will not be inferred from a guaranty of workmanship and materials and "the proper construction of said improvement."

274 — 24

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. JESSE A. BALDWIN, Judge, presiding.

TOLMAN & REDFIELD, and HENRY P. CHANDLER, for appellant.

HARRY F. ATWOOD, and JOSEPH F. GROSSMAN, (SAMUEL A. ETTELSON, Corporation Counsel, of counsel,) for appellees.

Mr. JUSTICE DUNN delivered the opinion of the court:

This was a bill in equity filed in the circuit court of Cook county by appellant against the city of Chicago and the Chicago Railways Company, involving the question of appellant's liability for the cost of repairing a portion of the roadway of Lincoln avenue, which had been paved by appellant under a contract with the city. The trial court entered a decree dismissing the bill for want of equity. That decree was affirmed by the Appellate Court. A certificate of importance being granted, the case has been brought here on appeal.

The city of Chicago on May 20, 1907, entered into a contract with appellant for the paving of the roadway of Lincoln avenue from Wrightwood avenue to North Western avenue, in said city. Under the ordinance providing for such improvement the contract provided for filling, grading, and paving with creosoted wood blocks upon a sand cushion and concrete base, all the roadway except sixteen feet in the center, which was to be paved by the street railway company. In compliance with the ordinance a special assessment to defray the cost of the improvement was levied and confirmed. The city advertised for bids, and appellant, being the lowest bidder, was awarded the contract. The contract provides, among other things, as fol-

lows: "That the material furnished and used and the workmanship employed in the construction of the said improvement shall be of such character and quality as to insure the same to be free from all defects and in continuous good order and condition, satisfactory to the board of local improvements, for a period ending five (5) years from and after the first day of December next following the completion and acceptance of the same; and as a guarantee of the faithful performance of these specifications, the quality of the materials furnished and the proper construction of said improvement, the contractor hereby agrees to keep and maintain said improvement, without additional charge or cost to the city of Chicago, in such order and condition as will be satisfactory to the board of local improvements, for the period ending five (5) years from and after the first day of December next following the completion and acceptance of the same, which keeping and maintaining shall include repairs or the entire reconstruction of the same. * * * That in order to enforce the faithful performance of the terms and conditions of said above agreement on the part of the contractor to keep, maintain and repair said improvement, the city of Chicago * * * may, upon the completion of said work, retain five (5) per cent of the cost of the total work performed by the contractor, on the following terms and conditions: If the contractor shall fail, neglect or refuse to repair, keep and maintain said improvement in good order and condition in accordance with this contract and specifications," then the city of Chicago, after giving ten days' notice, may make such repairs and pay the cost thereof out of said five per cent. The contract further provides that this five per cent "shall be deemed only as security additional to the bond of the contractor executed to secure the performance by the contractor of this agreement. * * * All material to be incorporated in the work, all labor performed and all appliances, tools and methods used shall be subject to the inspection and ap-

proval or rejection of said board of local improvements, and the said board of local improvements reserves the right to finally decide all questions arising as to the proper performance of said work." The ordinance and contract provide that for the roadway there should be a six-inch foundation of concrete, upon which should be spread a layer of sand one inch thick, and upon the sand cushion should be placed the creosoted wooden blocks. The plans for the improvement were designed and the specifications prepared by the engineers of the city of Chicago and the work was done under the supervision of the city officers.

The pavement was commenced in the fall of 1907 and completed in the three years following. While it was being constructed the street railway company laid a new track on Lincoln avenue, the railway gang going ahead of the construction gangs of appellant on this portion of the work. When the pavement was completed the board of local improvements filed in the county court of Cook county a certificate that said improvement conformed substantially to the requirements of the original ordinance for the construction of the same, and November 11, 1910, the county court entered an order finding the facts in the certificate to be true. The street railway was reconstructed with new foundations, ties, rails, accessories and pavement, pursuant to plans and specifications approved by the board of supervising engineers. The appellant company was not advised with and had nothing to do with reference to the plans and specifications as to re-laying and re-building the railway tracks. When the railway company completed the reconstruction of its roadway and tracks it began operating heavier cars than theretofore used on that track, the new cars each weighing from 9000 to 12,000 pounds more than the old. Within about two years after the completion of the improvement defects began to appear in it, most, if not all of them, adjacent to and along the rails of the street railway. These imperfections afterwards spread outwards

from the rails towards the curbs. The defects consisted largely in depressions of the creosoted blocks. Later, the surface of the pavement rose in places between the outside rails and the curbs. All the defects appeared within five years from the first day of December next following the completion and acceptance of the contract. The great weight of evidence in the record is to the effect that the depressions in the surface of the pavement, and possibly all other defects, resulted from displacement of the sand cushion beneath the blocks; that the risings or swells in the surface of the pavement resulted from the crowding together or heaping up of the sand cushion beneath the blocks.

Counsel for appellant argue that the foundation of the railway track was not built strong enough to sustain the heavier cars used after this pavement was put in; that the rails, being permanently depressed, afforded an opportunity, by the vibration of the rails and the water falling upon the pavement, to pump or draw the sand cushion out from under the creosoted blocks into this depressed surface in or about the rails of the street railway company or heap the sand up under certain portions of the pavement. Counsel for the city argue that there was a defect in the contour of the surface of the roadway as originally constructed which permitted water to drain towards the rails, and this, aided by the vibration of the rails, forced the sand out. The record shows that after the track had been used for some time the rails were raised slightly by the street railway company and apparently a firmer foundation put under them, which, it seems, tended to lessen the vibration, though there is testimony that it was hardly possible to eliminate entirely the vibration from the heavy traffic of modern street cars. A witness testified that at the time of putting in this improvement it was impossible to determine whether the specifications were adequate for the reconstruction of the street railway tracks and the operation of cars. While there is some conflict in the testimony on the various points, we

think from this record that there can be no question that the pavement was constructed, the material furnished and the work performed in accordance with the terms of the ordinance, plans and specifications, and that all of the material defects in the pavement were caused by the sand cushion not remaining in place between the concrete base and the creosoted blocks.

Shortly after this suit was begun, it being recognized that the public interests required that the pavement should be repaired at once in order to prevent further deterioration, it was agreed by the parties that the city officials should, if possible, procure an appropriation for the cost of such repairs, which should be deposited with the clerk of the circuit court, and that the company should complete the repairs in accordance with an agreement entered into; that the question whether the city or the company should finally pay for these repairs should await the decision of the courts as to the proper construction of the contract under which the original pavement was constructed. The bill prays that the city may be restrained from paying for the repairs from the five per cent reserved out of the contract price.

From the testimony before us there can be little, if any, question that the deterioration of the pavement in question was caused by the vibration of the rails of the street railway track acting on the water that collected under and about the creosoted blocks, thus causing the sand to be displaced under said blocks. The principal question, therefore, to be decided is whether, under a proper construction of the contract, appellant is not only liable for the quality of the materials and workmanship, but for an injury to the pavement caused as here stated. In construing contracts, courts will always seek to discover and give effect to the intention of the parties, and for the purpose of ascertaining such intention will endeavor to place themselves in the position of the contracting parties, so that they may understand their language in the sense in which they used it. (*Field* v. *Lei-*

*ter,* 118 Ill. 17; *McLean County Coal Co.* v. *City of Bloomington,* 234 id. 90.) The city authorities designed the type of the pavement and of the track construction to be employed in rehabilitating the street railway tracks. The contractor was not consulted in regard to either. The city authorities drafted the contract and the specifications attached thereto. After appellant had accepted the contract it had no power to deviate from any of the specifications in order to make the pavement more durable. The contractor's work was laid out with the utmost particularity by these specifications. The city had a force of inspectors constantly supervising the work, and the proof shows, without contradiction, that the contractor complied strictly with the inspectors' instructions and all the specifications. There is no claim that any defective material was used. The work was done precisely as directed by the city authorities, and when completed it was accepted and approved by those authorities. It is plain from the uncontradicted testimony in this record that at the time this contract was executed the experience of the men most expert in the construction of street car tracks and in putting down this class of pavement was not of such nature as to make it possible for them to determine with any certainty whether the specifications for constructing this pavement or for rehabilitating the street railway tracks and right of way were of such a character as to prevent the injury to this pavement from the causes described in the record. The proof tends strongly to show that in 1907 no one connected with preparing or executing the contract and specifications had any reason to anticipate that the vibration of the rails, caused by the heavier cars, would force the sand from the cushion to the surface or into the depression caused by the sinking of the rails or in heaps under the blocks. The engineer in charge of this work for the city, as we understand his testimony, claimed that the injury was caused, in part, by the contractor, with the concurrence of the inspectors, placing the highest parts

of the concrete base too far from the center of the street, but his testimony clearly shows that when the work began he did not realize this was the case and did not attempt to remedy it during the first two years of the construction of the pavement. In the third year he claims he made such changes as would tend to remedy the difficulty. The chancellor found in the decree that the contractor was liable for all defects "resulting from any lawful and reasonable use of the street which could fairly and reasonably have been contemplated by the parties when they entered into the contract." In the light of the testimony in this record we can not see how the cause of this injury to the pavement could have been reasonably anticipated at the time the contract was entered into. The contract should be given a reasonable construction and every part should be considered and given effect, if possible. *Mittel* v. *Karl,* 133 Ill. 65; *Riggin* v. *Love,* 72 id. 553; Bishop on Contracts,—1887 ed.—secs. 382, 384.

In ascertaining the intention of the parties as to the meaning of that portion of this contract which more especially relates to the guaranty, we are given some aid by the introductory clause or preamble of that portion. That preamble states, that "as a guarantee of the faithful performance of these specifications, the quality of the materials furnished and the proper construction of said improvement, the contractor hereby agrees to keep and maintain said improvement," etc. It might well be considered that if the parties intended that the contractor guaranteed to the city that its plans and specifications, if followed, would result in a street that would be adequate under all conditions or that otherwise the contractor would stand the loss of inadequate plans, something definite as to a guaranty of the plans and method of building prescribed by the city would have been inserted. The mere mention of "the proper construction of said improvement" would hardly seem to extend the guaranty to cover the sufficiency of the plans and

specifications, over which the contractor had no control. Construing this entire contract, placing ourselves in the position of the contracting parties, with the facts that they had before them at that time with reference to work of that character, we are of the opinion that the contractor was liable only for defects in the pavement resulting from the faulty character or quality of the materials used or the workmanship employed in the construction of the improvement. Fairly construed, the contract does not guarantee that the improvement will be free from all defects for five years, but guarantees only against defects arising during that time on account of the character and quality of the materials and workmanship. To establish a breach of the contract as to this guaranty clause it is necessary to prove that the materials used or the workmanship employed were not of the prescribed character and quality and that the defects in the pavement resulted from the faulty character of the materials or workmanship. The contract is not merely to do a particular thing but to do it in a particular way, using specified materials in accordance with the plans and specifications, which are to be the sole guide. The contractor had no discretion as to materials to be used or the manner in which the work was to be done. Every grade and every detail was fixed and directed by the city. Would not an interpretation of this contract in accordance with the decree and the decision of the Appellate Court in practical effect require the contractor to disregard the specifications of the contract if during the work he became convinced that the city's specifications would not result in constructing a pavement which would, under all circumstances and at all hazards, endure five years, even though when the contract was signed no one could reasonably anticipate the defect later found to ·exist in the plans and specifications? It might well be urged, if this contract is interpreted as argued by counsel for the city, that in order to construct work of this nature a provision would be required in the contract

that plans and specifications might be changed if during the progress of the work it was found that they were not of such character as to bring about the desired result,—provisions similar to those found in *Filbert* v. *City of Philadelphia*, 181 Pa. St. 530. The contract made by the parties established their rights and liabilities and the court cannot change or modify its terms. While it was within the power of the contractor to insure the plans and guarantee the sufficiency of the specifications to cause the pavement to last for five years regardless of all defects or their origin, appellant will not ·be presumed to have so guaranteed such plans and specifications. A guaranty of design or plan should not be inferred but must be clearly expressed in the contract. (*MacKnight Flintic Stone Co.* v. *Mayor*, 160 N. Y. 72; *Morley* v. *St. Joseph*, 112 Mo. App. 671.) We can reach no other conclusion, construing the guaranty clause together with the rest of the contract, in connection with its subject matter, than that the appellant was only to be held responsible for defects in the materials or ·workmanship affecting the condition of the pavement within five years from December 1 next following the date of its acceptance. The following among other authorities tend to support this conclusion: *District of Columbia* v. *Clephane*, 110 U. S. 212; *Chicago, Burlington and Quincy Railroad Co.* v. *Bartlett*, 120 Ill. 603; *Green River Asphalt Co.* v. *City of St. Louis*, 188 Mo. 576; *Filbert* v. *City of Philadelphia, supra; Gilliam* v. *Brown*, 116 Cal. 454; *MacKnight Flintic Stone Co.* v. *Mayor, supra; Penn Bridge Co.* v. *City of New Orleans*, 222 Fed. Rep. 737; *Bentley* v. *State*, 73 Wis. 416.

Counsel for the city have cited authorities which they insist require this contract to be construed in accordance with the holdings of the Appellate and trial courts. The contracts in those cases were not worded as this was, and the conditions all appear to have been different from the conditions surrounding the making and carrying out of this

contract. For example, in the case of *City of Akron* v. *Barber Asphalt Co.* 171 Fed. Rep. 29, the contract stated, in terms, that the contractor guaranteed "a pavement at all times during any guarantee period that may be selected, * * * in as perfect a condition as the day it was laid." The opinion also states in that case (p. 36) : "The parties seemed, at the time the work was begun, to understand that the city was not required actively to concern itself about the track foundations." Here the city had entire charge of the track foundations. Indeed, in all the cases cited from other jurisdictions it is evident, from reading those decisions, either that the contract in specific terms guaranteed against the defects causing injury to the work, or the contractor, from his experience and from facts generally known to persons acquainted with the character of the work being done, knew that an injury might reasonably be anticipated to arise in the way that it was actually brought about in the specific case.

Counsel rely especially upon *City of Lake View* v. *Mac-Ritchie*, 134 Ill. 203. There, as in the other cases just referred to, the contract was not worded as it is here, the provision relied on reading, "all the work to be guaranteed to remain in good condition for one year from date of acceptance." Then, too, the opinion states, as a reason for its construction of the contract, that the contractors had had many years' experience in work of that character, and "a few years before had laid a similar pipe for the same municipality within a few feet from the proposed line of pipe." Without regard to the difference in the wording of the two contracts, if the proof had shown here that this contractor, at the time that it entered into the contract, had a few years before constructed a pavement similar to the one here in question and that from similar causes it had deteriorated in the same manner as did this, then that case would strongly support the position contended for by coun-

sel for the city. Under the facts here we do not think it is in point.

The construction that we have placed upon this contract does not require us to consider the question whether, if the contract were construed as contended for by counsel for the city, it would be unconstitutional under the reasoning of this court in *Cole* v. *People,* 161 Ill. 16, *Graham* v. *City of Chicago,* 187 id. 411, and other similar cases.

The judgment of the Appellate Court and decree of the circuit court must be reversed and the cause remanded to the circuit court for further proceedings in harmony with the views herein expressed.    *Reversed and remanded..*