CARMEN REYES, Plaintiff and Appellee, v. JOSÉ MARÍA ALVAREZ ET UX., Defendants and Appellants.

No. 4584.    Argued February 5, 1929.—Decided May 9, 1929.

MR. JUSTICE TEXIDOR delivered the opinion of the court.

Carmen Reyes is the owner of urban property No. 14 on the north side of Cristóbal Colón street, Arecibo. It is a concrete house of one story covering completely the lot on which it is built and adjoins on the east a two-story house belonging to the appellants, the upper story being of wood and the ground story of concrete, with an alley on its west side which separated it from the plaintiff's house. The defendants razed their house in 1925 in order to build a house of reinforced concrete. For that purpose the defendants eliminated the alley on the west side and entered into negotiations with the plaintiff to secure her consent that they use the eastern wall of her house in building their wall and house, giving to the plaintiff the right to use the wall to be built by them in case she should desire to add a second story to

her house, which had windows and openings on that eastern side. The defendants built a new house of reinforced concrete and for that purpose constructed on the west side of the building and against the eastern wall of the plaintiff's house some concrete columns flush with the wall, thus closing the windows and openings in that wall, which is used as such for the first story of the house of the defendants. In the third story of the house built by them the defendants made several openings in the form of windows, but covered by mottled glass of different colors, and did so without the consent of the plaintiff, who prayed the court for a judgment ordering the defendants to close the openings or windows which they had opened in the wall. In their answer the defendants opposed the plaintiff's prayer, alleging that the windows and openings which existed in the plaintiff's house overlooking the alley of the defendants had been opened without their permission and that the wall of the new house was built against the wall of the plaintiff's house at the request of her agent and for the improvement of that wall.

The case went to trial, the evidence was heard, an ocular inspection was made and the report of it was attached to the record and copied into the opinion in the case. This was most discreet and correct on the part of the judge, but unfortunately this practice is not followed with frequency. It appears from the ocular inspection that the openings and windows in the east side of the plaintiff's house have been closed or covered by the building of the defendants; that on the west side of the third story of their house there are several openings about four and a half feet wide by three feet high with permanent wooden frames and covered or closed with glass windows composed of irregular panes of stained glass which are not transparent even in the daytime; that the wall which forms the western boundary of the defendants' house is built of masonry and forms a part of the plaintiff's house "and is of the nature of a party wall," and

that they saw the concrete columns and the beam resting on them flush with the brick wall of the plaintiff.

The court rendered judgment for the plaintiff, with costs on the defendants, and that judgment has been appealed from.

Eight errors are assigned by the appellants. Those marked 1, 2, 3 and 5 refer to the weighing of the evidence in regard to the existence of an agreement between the plaintiff and the defendants granting to the defendants the right to use the wall of the plaintiff as a party wall and to the plaintiff, if desired, the right to profit by the wall to be erected by the defendants; in regard to the fact that the wall built by the defendants was a party wall, and in regard to the consent of Catalina Reus that her husband burden the house built by him with a party-wall easement. It is alleged that the court erred in finding that there was a party wall by confounding it with a division wall; in finding that the wall of the third story of the house of the defendants is a party wall; in ordering the closing of the openings, and in imposing the costs.

In the opinion of the court on which the judgment is based careful consideration is given to the question of the existence of the party wall and the consequent servitude. The court is led into that consideration by the provisions of section 587 of the Civil Code forbidding an adjoining owner to open in the party wall any windows or openings without the consent of the other.

Really the question of the existence of a party-wall servitude entails an apparent difficulty in its solution. The eminent commentator Sánchez Román maintains that the party-wall servitude partakes more of a co-ownership than of a servitude and defines it as "the joint ownership of a wall or fence situated on the boundary line of two adjacent tenements," giving it the character of a special joint ownership. In this connection he comments on p. 494 of vol. 3 of his treatise on Civil Law as follows:

"The status of a party-wall servitude is produced by the immediate contiguity and union of two walls or party walls which materially become one, and the right or use made of each respective part of the same wall by the two contiguous owners for building thereon, their structures supported by a common foundation and enjoying mutual support and strength."

This opinion is in accord with that of Manresa, another eminent commentator who on pp. 762 and 763 of vol. IV of his Commentaries on the Spanish Civil Code has expressed himself as follows:

"Is a party-wall servitude a servitude? Strictly speaking the party-wall servitude is a joint tenancy, a co-ownership of a special character. It is defined by Laurent as 'the co-ownership *pro indiviso* of a wall, a ditch, a hedge dividing or limiting two contiguous tenements . . . . party-wall servitude constitutes a joint tenancy forcibly *pro indiviso.*'

"In order to explain juridically why a party-wall servitude partakes of a servitude—a lien on another's property for the benefit of a tenement—the best thing to do is to analyze concretely the undergoing relation. The party wall does not entirely belong to *me; it belongs to another and to me*—co-ownership; but neither of us can make use of it, especially for certain uses, unless it is in a *complete* manner; the whole wall, in its physical entirely, is used by the co-owners—undivided co-ownership; now, the indivision of the wall and the use of the whole of it by each co-owner determines the benefit of each user, which benefit operates as a lien on the other joint owner of the wall; there are certain continuous uses where that relationship is not so apparent; but there are others where, owing to their difinite and specific character, such relationship is perfectly defined, clearly showing grounds in justification of the action of the Spanish legislator."

Commenting on this same question, Scaevola has said:

"The party-wall servitude in its legal aspects partakes more of a joint tenancy than of a servitude, although we recognize therein certain anomalies in discrepancy with certain characters of that institution." Commentaries on the Civil Code, vol. 10, p. 425.

Spanish jurisprudence, although somewhat hesitatingly at first, finally consecrated that doctrine in a judgment of the

Supreme Court of Spain of March 16, 1888, prior to the adoption of the Code, wherein it was held that the division wall of two urban tenements is owned in common by the adjoining owners, each having therefore the right that it serve as an inclosure of the tenement to such altitude as may be to his convenience, within the limitations imposed by the municipal ordinances.

In the United States the jurisprudence is not uniform as to what is a party wall. In some cases it has been held that if two persons own a party wall which in half its width occupies land of each person, these are not "tenants in common of the wall or the land on which its stands." (*Matts* v. *Hawkins,* 5 Taunt. 20). Bouvier defines it as "a wall erected on the line between two adjoining pieces of land belonging to different persons, for the use of both properties." In an Illinois case (*Field* v. *Leiter,* 118 Ill. 17) it was defined as a structure for the common benefit and convenience of the properties which it separates, either party being allowed to make use of it.

In *Lederer* v. *Colonial Ins. Co.,* 130 Iowa, 157, 106 N. W. 357, the terms "party wall" and "wall in common" were given the same meanings and in the acts and statutes they were considered synonymous.

In *Marx Weill* v. *Baker, Sloo & Co.,* 39 La. Ann. 1101, we find:

"There is no division of ownership of a wall in common; the whole belongs jointly and in indivision to the neighboring proprietors without reference to the dividing line between the lots."

There seems to be a contradiction between the doctrine laid down by the Supreme Court of Spain in the judgment of March 16, 1888, and another of January 12, 1906, where the following appears:

"Considering that even though it is undeniable, and moreover it is acknowledged, that the wall involved in this action is not a party wall, but belongs exclusively to the Rosal Brothers, this is not an impediment to the possibility of establishing thereon the legal.

party-wall servitude, under the provisions of section 171 of the municipal ordinances of Oviedo in connection with section 571 of the Civil Code, owing to the absence from the Code of any other provision opposed to such servitude, on the basis and previous recognition of the exclusive property of the party wall in a person who, through real expropriation, should have to bear such servitude in the future, and there must be taken into consideration the violations of the third reason as to the absolute refusal by the appellate court of Oviedo of the right which by way of counter-claim has been sought in the action by Policarpo Herrero, although it must be recognized only when the time comes for the latter to erect any structure requiring the use of such servitude, since the aforesaid precept of the ordinances does not justify the interpretation that at any moment before the time for building comes, the sole owner of such party wall may be dispossessed, under that precept, of his exclusive ownership for any other purpose.''

The contradiction is only apparent. In this last case there is no doubt of the existence of a municipal ordinance which by its section 171 grants to any person intending to build against an adjoining wall the right to acquire the party-wall servitude wholly or partly, by paying half of the value of the wall and half of the value of the land on which it stands, and according to the Spanish Civil Code the party-wall servitude is governed by its provisions and by the ordinances and local customs not in conflict with the Code. Therefore, the Oviedo ordinances had in that case the force of law.

We find in the matter of party-wall servitude that our Civil Code gives exceptional importance to presumptions. Section 579 of that Code reads as follows:

''Sec. 579. The servitude of party walls and fences is presumed, unless there is a title or exterior sign or proof to the contrary:

''1. In dividing walls of adjoining buildings, up to the point of common elevation.

''2. In dividing walls of gardens or yards, situated in a town or in rural districts.

''3. In fences, enclosures, and live hedges dividing rural tenements.''

Notice the form of establishing the presumption—''unless

there is a title or exterior sign or proof to the contrary.''
The exterior sign is, so to speak, the strongest presumption.
And it is understood that there are in the various cases cited
in section 580 of the same Code among those which deserve
special attention for the purpose of the present suit, the
following:

"3. When the entire wall is built on the the land of one of the
tenements, and not on the dividing line of the two contiguous tene-
ments.

"4. When it bears the burden of the binding beams, floors, and
roof frame of one of the houses and not of the adjoining one.''

In our opinion it does not appear from the evidence in
the present case that the defendants built a wall on the divid-
ing line between the two tenements, nor that the wall of the
plaintiff's house bears the burden of the binding beams, floors
and roof frame of the defendants' house. This results from
an examination of the report of the ocular inspection made by
the judge. But the real fact is that the east wall of the
plaintiff's house appears as the west wall of the defend-
ants' house in the lower story. If over that wall and resting
on it the wall of the upper stories had been built, we would
think that there existed a real party-wall servitude. But
we can not reach that conclusion from what appears in the
record. The adjoining owners agreed on a special right and
that in the future if the plaintiff should decide to add
another story to her house, she could use the wall of the
defendants' house. But instead of finding from the practical
facts of the case the elements of a party-wall servitude, we
find the exterior signs contrary thereto, if strictly construed.

Really the issue is reduced to a denial of a servitude of
light and view, a question which has been clearly and con-
cretely presented in the complaint. The purpose of the com-
plaint is declared in its prayer:

"In virtue whereof I pray the court to render judgment ordering
the defendants to close the openings or windows which they have
opened in the said wall . . . .''

The object of a plaintiff could not be expressed more clearly.

Had the defendants the right to open in the wall of their house overlooking the property of the plaintiff the openings or windows made by them? Certainly not.

If the wall was a party wall there is no doubt that its owner could not make openings or windows in it without establishing thereby a sign contrary to the servitude, which would be an actual contradiction. See subdivision 1 of section 580 of the Civil Code which prescribes that openings or windows in a party wall are exterior signs contrary to a servitude.

If the wall is a party wall the defendants can not use it for opening windows even temporarily without first obtaining the consent of the plaintiff, which was not done in the present case.

And as the wall is not a party wall the case is governed by the provisions of section 588 of the Civil Code, as follows:

"Sec. 588. The owner of a wall which is not a party wall, adjoining another's tenement, may make in it windows, or openings to admit light, at the height of the ceiling joists or immediately under the ceiling, of the dimensions of thirty centimeters square, and in any case, with an iron grate embedded in the wall and wire screen.

"Nevertheless, the owner of the tenement or property adjoining the wall in which the openings are made may close them, if he acquires the part-ownership of the wall and if there be no agreement to the contrary.

"He may also obstruct them by building on his land or raising a wall adjacent to that having such opening or window.

"Sec. 589. Windows with direct views, or balconies or any similar openings projecting over the tenement of a neighbor shall not be made if there is not a distance of two meters between the wall in which they are built and the said property.

"Neither can side or oblique views be opened over the said property, unless there be a distance of sixty centimeters."

The jurisprudence of Porto Rico on this matter is found mainly in the following cases:

*Garcia* v. *Garcia*, 25 P.R.R. 119, in which numerous judg-

ments of the Supreme Court of Spain are cited and it was held that when the law prescribed that windows with direct view can be opened only at a distance of two meters from the adjoining property of another it recognized the right of the owner of the adjoining property to demand judicially compliance with that provision. The opinion in that case examines and considers the legal provisions antedating the code and those of the code and the jurisprudence in regard to both.

In *Brown* v. *Vargas et al.*, 36 P.R.R. 507, it was held that some openings in a concrete wall were sufficiently closed with wood. We desire to reproduce the following paragraph of that opinion:

"The matter for decision was reduced as to whether the openings in the concrete wall should have been closed with the same material of the wall, or whether it was sufficient to have done it with lumber. The appellants insist on the former, but they do not cite any authorities thereon nor have we been convinced by their light argument. Though the longer duration of concrete is well known, it is also admitted that the wooden material used in building from time immemorial can not be said to have fallen into disuse on account of the modern concrete structures. On the contrary, in these structures wood is always used for doors, windows, etc., which are the means of closing them. As the openings in the wall have been hermetically closed with wood, the law has been complied with for the present. If in the course of time, a factor which in the long run destroys everything, the wood has done its work and is destroyed or taken out of the openings, the rights of the plaintiffs or of their successors subsist and they can have it enforced at any time. Meanwhile, as wooden structures are not prohibited, the defendants are complying with the law."

The phrase "have been *hermetically* closed with wood" is of great importance. (Italics ours.)

In *Arabía de Goyco* v. *Armstrong*, 37 P.R.R. 158, it was said:

"The defendant himself became aware that he could not preserve his terrace entirely as such, that is, open upon the side which looks

toward plaintiff's lot, and over the cement wall erected a wooden wall leaving the openings which are described in the inspection. It seems that he attempted to place himself within the rule laid down in the *Vallecillo Case, supra.*

"Did he so place himself? In our opinion he did not. In the *Vallecillo Case* a high independent wall of reinforced concrete was built on the dividing line between the lots, and the court said: This having been done, it matters nothing what the owner of the lot may do in it. In this case the wall was built but certain openings, the character of which must be investigated, were left.

"As we have seen, the terrace as such, that is, considered as a balcony or a similar opening, could not be built, as it was not only beyond the limit of the two meters fixed by the statute, but extending as far as the boundary line itself.

"If it should be held that because of the raising of the wall of the boundary line the terrace ceased to be such as far as the plaintiffs are concerned, then the following question comes up: Can the openings existing both in the lower and the upper stories be considered or not as windows?

"'Window,' according to the Royal Academy, is 'an opening more or less above the floor level, made in a wall for the purpose of affording light and air.' 'The wooden shutter or shutters with which a window is closed' is also called a window.

"Although it is necessary to admit that we are not dealing here with ordinary windows with their shutters, it is not possible to fail to conclude that the openings through which light and air are received, existing in the two stories of the structure involved in this case, are windows."

The strongest allegation in the case under consideration is that the windows are closed with mottled glass. It differs from the case of *Brown* v. *Vargas, supra,* in that the openings were hermetically closed. In the case before us the existence of the panes of glass, a material so easy to be broken and disappear and which lets in the light, does not afford the same guarantee. The openings are in reality left open and are not covered and hermetically closed.

We can not conclude that the errors assigned by the appellants were committed, except that in the opinion of the district court mention is made of a party-wall servitude

which was not proved. But this would not be a ground for reversal, for the question in regard to light and view was decided correctly.

The judgment appealed from must be affirmed.